PHILADELPHIA AND READING RAILROAD COMPANY, a corporation of the State of Pennsylvania, Defendant Below, Plaintiff in Error, *vs.* SAUNDERS C. DILLON, plaintiff below, defendant in Error; Same, plaintiff in Error, *vs.* CLARENCE M. BEADEN-KOPF, plaintiff below, defendant in Error.

1.  RAILROADS—EVIDENCE HELD NOT TO SHOW AUTOMOBILE COULD HAVE BEEN STOPPED BEFORE COLLIDING WITH STANDING TRAIN.

Evidence that an automobile was running from 15 to 20 miles an hour, and that the driver and his guest saw a train standing on a crossing when 40 or 50 feet away from it, and testimony of the guest that he could stop a car running eighteen miles an hour in fifty feet, did not show that the particular car could have been stopped in time to avoid running into the train in view of the known variation in machinery, size, and weight of various kinds of automobiles.

2.  HIGHWAYS—DRIVER MAY EXPECT THAT HIGHWAY WILL NOT BE OB-STRUCTED SO AS TO INJURE HIM.

A traveler on a highway by day or night may expect that it will not be obstructed unlawfully or in such a manner as to cause an injury while he is in the exercise of due and reasonable care.

3.  HIGHWAYS—DUE CARE OF TRAVELER DEPENDS ON CIRCUMSTANCES.

What constitutes due and reasonable care on the part of a traveler on the highway injured by an obstruction depends on the circumstances of the case.

4.  HIGHWAYS—PERSONS OBSTRUCTING HIGHWAY MAY EXPECT TRAVELER TO USE DUE CARE.

All who lawfully obstruct a highway may rightly expect that travelers on the highway will use due and reasonable care to avoid any danger because of an obstruction.

5.  RAILROADS—OBSTRUCTION OF HIGHWAY FOR LAWFUL TIME NOT NEGLI-GENCE.

It is not in itself negligence for a railway company to allow a train of cars to remain a reasonable or lawful length of time across a highway.

6.  RAILROADS—ABSENCE OF LIGHTS ON CARS OBSTRUCTING CROSSING NOT PROOF OF NEGLIGENCE.

The absence of lights or warning signals on a train of cars standing on a highway crossing at night for a reasonable or lawful length of time does not of itself prove that the railroad company was negligent as to a traveler colliding therewith.

7.  RAILROADS—AUTOMOBILE DRIVER WHO CAN STOP AFTER SEEING OB-STRUCTION, BUT DOES NOT, IS NEGLIGENT.

When, in view of his rate of speed, the illumination made by his lights, and the mechanism of the car, the driver of an automobile after seeing a train of cars standing on a crossing could have stopped the automobile, his failure to do so is contributory negligence barring his right to recover for damages.

8. RAILROADS—TRAINMEN MAY ASSUME AUTOMOBILE DRIVER CAN SEE AND AVOID STRIKING TRAIN OBSTRUCTING CROSSING AT NIGHT.

Those in charge of a railroad train lawfully obstructing a highway crossing at night had a right to assume that a reasonably careful person driving an automobile would adopt such lights and rate of speed that he could and would stop the automobile within the distance that he could see the train and avoid running into it and were not negligent in failing to give warning by lights or otherwise of the presence of the train on the highway.

9. RAILROADS—NOT LIABLE FOR INJURIES IN COLLISION WITH STANDING CAR WHEN NOT NEGLIGENT.

A railroad company is not liable for an injury in a collision between an automobile and a car standing on a highway crossing, where it was not negligent whether the automobile driver was careful or negligent.

(*Supreme Court, March* 24, 1921)

CURTIS, Chancellor, PENNEWILL, Chief Justice, and RICE, J., sitting.

*John W. Huxley, Jr.,* for plaintiffs in error.

*Robert H. Richards* and *James I. Boyce* for defendant in error.

Two actions by Saunders C. Dillon, and Clarence M. Beadenkopf, against the Philadelphia and Reading Railway Company, tried together. Verdicts and judgments for plaintiffs. The defendant company brings error, writs Nos. 1 and 2, June Term, A. D. 1920, to Superior Court for New Castle County, and Nos. 85 and 86, January Term, A. D. 1919. Judgments reversed and judgments directed for defendant.

Both actions were for damages resulting from a collision between an automobile owned and driven by Beadenkopf, and a car standing on the tracks of the Philadelphia and Reading Railway Company, at the intersection of Third and Harwick Streets, Chester, Pennsylvania. By agreement of counsel the suits were tried together in the court below; also argued together in the Supreme Court at the January Term, A. D. 1921.

The basis of the actions was the alleged negligence of the railway company in obstructing the public highway in such a manner that its freight car lying across Third Steet could not be seen until the automobile in which the plaintiffs below were riding had gotten so close thereto that although the driver of the automobile was exercising due care and caution, it was impossible for the driver

Statement.

to stop the automobile before colliding with the freight car; and also for the alleged negligence on the part of the Railway Company in so leaving its freight car on a public highway in the City of Chester without a lookout and without a light on the car to warn travelers on Third Street of its presence across the street.

The defendants in their brief stated the undisputed facts as follows:

That the plaintiffs below, on the night of December sixth, 1918, between midnight and one o'clock A. M., were proceeding in an automobile from Philadelphia to Wilmington; that they traveled south along Third Street, a public street in the City of Chester and State of Pennsylvania; that Third Street is a straight street for five or six blocks before coming to the crossing; that Third Street is slightly down-grade towards the crossing; that the railroad crossing on Third Street is level with the street, that it looks like any street car crossing, that one would cross it without paying much attention to it, and that one gets no bump or jar going over it; that the crossing is a junction track between the Pennsylvania Railroad and the Philadelphia and Reading Railroad, and is used for switching at night; that the automobile, a Franklin sedan, was owned and driven by Beadenkopf; that the automobile was equipped with Legalite lenses and was being driven with the dimmers because within the limits of the City of Chester, and because people had yelled to Beadenkopf to put his lights out; that Beadenkopf could see ahead possibly fifty feet; that Beadenkopf was an experienced driver; that the car and brakes were working properly; that Beadenkopf had frequently gone to Philadelphia via Third Street in the City of Chester; that Dillon was riding with Beadenkopf as a guest; that Beadenkopf and Dillon had had two drinks, one with their dinner and one afterwards; that the automobile collided with a freight car which was standing on the tracks of the defendant below, across Third Street and blocking the entire street; that there was an arc lamp on Third Street south of the freight car; that the plaintiffs below saw the freight car at practically the same time, when they were between forty and fifty feet away from it; that Beadenkopf and Dillon

were injured as a result of the collision; that the automobile was damaged; that the automobile was "brand" new; that it cost Beadenkopf Ten Hundred and Eighty-four Dollars ($1,084.00) to get an older model to replace it and that the older model was a car of less market value; that Dillon has not yet recovered from his injuries and that they are permanent; that Dillon was in the Chester Hospital five days; that Dillon had gone to Philadelphia frequently by way of Third Street in the City of Chester, but was not familiar with the crossing; that Dillon could stop a car going eighteen miles an hour in fifty feet.

The facts in dispute and which it was claimed were necessarily left to the jury are:

Whether it was dark or clear, or whether the moon was shining; whether the arc lamp on Third Street, south of the freight car, was lighted or out; whether the freight car, if the said arc lamp was lighted, was in its own shadow by reason of the arc lamp and what was the effect of this shadow on the visibility of the freight car; at what distance up Third Street the freight car could be seen; whether Beadenkopf or Dillon, or both, were intoxicated; the speed at which the automobile was traveling; whether Beadenkopf applied his brakes; whether the freight car was a box car a battleship coal car; whether there was any warning to indicate the obstruction on the highway.

CURTIS, Chancellor, delivering the opinion of the Court:

The case is brought to this court on a writ of error to the Superior Court of New Castle County by the defendant below. There were two suits with different plaintiffs against the same defendant, and the cases were tried together. The defendant was charged in each case with negligently permitting freight cars to remain at night on its tracks directly across the highway without lights thereon, or other signal or warning being given of its presence, by reason whereof the automobile in which the plaintiffs were riding at night, and which was being driven with due care, ran into one of the freight cars, whereby the plaintiffs were injured and the automobile damaged.

The plaintiffs, Beadenkopf and Dillon, were riding about one o'clock A. M. on a straight street in Chester, Pa., fifty feet wide, in an automobile owned and then operated by Beadenkopf with Dillon as his guest, each being seated on one of the front seats of the machine, and the automible was driven into the side of one of the freight  cars of a train standing on the tracks of the defendant company motionless  directly across the whole width of the highway.   The freight car was a box car about twelve feet high above the rail.   The automobile was a new Franklin sedan equipped with lights on the front, and was being driven with dimmers on the lighted lights.   When the machine was about forty or fifty feet distant the train was discovered by each of the plaintiffs about the same time, and the brakes immediately applied.   The lights of the machine were such that the driver could see ahead possibly fifty feet, the brakes on the machine were working properly, and the driver was expert and familiar with the machine he was driving. Dillon testified that he could stop in fifty feet a car going eighteen miles per hout.   Each of the plaintiffs testified that there were no lights on the train and no flagman or warning given of the presence of the train.   Both of the plaintiffs were familiar with the road and the railroad crossing.

There was conflicting evidence as to whether the night, though dark, was clear or cloudy, and whether the moon was shining, but it was not shown to be foggy, misty or rainy.   There was also a conflict as to whether an arc light hung about twenty feet above the street on a pole located on the opposite side of the freight train was lighted at the time of the accident.   There was testimony that if the arc light was lit the train would have cast a shadow about thirty-two feet in width.  Also there was a conflict of testimony as to whether the trainmen exhibited warning lights swung across the track as the automobile approached the train and visible to those in it.   The speed of the automobile was disputed, the plaintiffs saying it was eighteen or twenty miles per hour, and other witnesses fixing a much higher rate.   There was a conflict of testimony as to whether either of the plaintiffs was intoxicated at the time of the accident.

[1] One other question discussed was whether it was shown that the automobile could have been stopped before reaching the train after it became visible. According to the plaintiffs' testimony the rate of speed was from 15 to 20 miles an hour and both of the plaintiffs saw the train when from forty to fifty feet away from it, but the distance within which this particular automobile could have been stopped at a given rate of speed was not shown, and the only evidence bearing upon it was the testimony of Dillon that going eighteen miles an hour he could stop in fifty feet a car, but he did not say he could so stop the car in which the plaintiffs were then riding. The known variation in machinery, size and weight of various kinds of automobiles, makes it clear that it was not shown that after the plaintiffs saw the train this machine could have been stopped in time to avoid running into the train.

[2-4] A traveler on a highway by day or night may expect that it will not be obstructed unlawfully or in such manner as to cause him injury while he himself is in the exercise of due and reasonable care, and what is such care depends on the circumstances of each case. All who lawfully obstruct a highway may rightly expect that travelers on it will use due and reasonable care to avoid any danger because of an obstruction. In every case of a collision between a vehicle on a highway and an obstruction therein the conduct of the traveler affects the corresponding duty of the one who causes the obstruction. This problem is more complex where the vehicle is an automobile than when it is horse drawn, because of the size, weight, mechanism and motive power of the machine, some of them capable of being driven at high speed, and all requiring and dependent upon the control of the operator. Animals have an instinct to sense danger, while in a highway, and their instinct of self preservation is a protection and guard to those in the vehicle. Indeed, it is common knowledge that a horse will discover the presence of danger while on a highway sooner than a man will, and will protect itself from injury by stopping short of, or evading or avoiding the point of danger; while a machine moves on until the motive power be exhausted or shut off,

or its direction is controlled by an independent human intelligence. Therefore, while it may be true as has been decided that it is not negligent for one to drive horses on a highway on a dark night without lights, this should not be extended to automobiles, for the reason stated in *Lawson v. Town of Fond Du Lac*, 141 *Wis.* 57, 123 *N. W.* (1909) 629, 25 *L. R. A.* (*N. S.*) 40, 135 *Am. St. Rep.* 30, viz.:

"A team of horses, if permitted to do so, will ordinarily follow the traveled track, even where it is so dark that their driver may be wholly unable to distinguish it. Under such circumstances an automobile could hardly be run a rod without running into a ditch, except by sheer good luck. A horse will ordinarily stop when a barrier is reached. A machine tries conclusions with it, and brushes it aside if not strong enough to resist the momentum hurled against it. Driving an automobile over a country road on a dark, rainy night without light would indicate a well-defined intent on the part of the driver to commit suicide, rather than the exercise of ordinary care."

One of the assignments of error is that the court below refused to grant a prayer for an instruction to the jury to render a verdict for the defendant. In deciding this question the evidence must be considered in light most favorable to the plaintiffs. So viewing the evidence, was it shown that the defendant was guilty of negligence?

[5, 6] The train was lawfully across the highway. The absence of lights on the train, or shown by the trainmen, or other signals to travelers of the presence of the train there is the negligence charged. It is not in itself negligence for a railroad company to allow a train of cars to remain a reasonable or lawful length of time across a highway. This is so stated in the brief of the plaintiff. The absence of such lights or warning signals does not of itself prove that the company was negligent as to the plaintiffs. *Gage v. Boston & M. R. R. Co.*, 77 *N. H.* 289, 295, 90 *Atl.* 855, *L. R. A.* 1915A, 363. There was no statute or ordinance which required such lights or warning, or regulating the speed of or lights on the automobile. The trainmen and the driver of the automobile each had a right to presume that the other would act as a reasonable person under all the conditions and surroundings of the crossing until the contrary should appear. This was said in a case in the Superior Court where the plaintiff was struck by

a moving train at a crossing. *Welch v. B. & O. R. R. Co.*, 7 *Penne-will*, 140, 143, 76 *Atl.* 50.

Here, then, the railroad company had a right to assume that the plaintiffs would act in a reasonable way to avoid running into the train of box cars while it was lawfully standing across the highway. If the defendant's trainmen had a right to assume that a reasonably careful man driving an automobile on a highway at night would use such lights and adopt such a rate of speed as that he could bring his machine to a standstill within the distance that he could plainly see by the lights on his machine a railroad box car twelve feet high standing across the highway motionless on a railroad track and completely obstructing his passage along a straight unobstructed highway, then the defendant did not then omit to perform any duty by not showing lights, or giving other warning of the presence of the train. This point has not been determined in this State with respect to automobiles, but has been elsewhere.

[7] Plainly if under a state of facts, such as stated immediately above, the driver of an automobile does not stop it before striking such a large object as a train of cars on a railroad track, when it be shown that considering his rate of speed, the illumination made by his lights and the mechanism of the car, he could, after seeing the obstruction have stopped the automobile before striking the obstruction, then he was clearly guilty of contributory negligence such as would bar his right to recover for damages. The case of *Gage v. Boston & M. R. R. Co.*, 77 *N. H.* 289, 295, 90 *Atl.* 855, *L. R. A.* 1915A, 363, is an illustration. There an automobile driven at such speed that it could have been stopped within twenty-six feet crashed into the side of a train of cars at night, though they were seen by the driver by the lights of the motor car when it was thirty-five feet away from the train. The court decided that the railroad company was not negligent in not giving warning of the presence of its train to the driver of an automobile, who after seeing the train in time to have stopped his machine before reaching the obstruction failed to do so.

In *Allison v. Chicago, etc., Co.*, 83 *Wash.* (1915) 591, 145 *Pac.*

608, where the lights of the machine shone one hundred feet ahead and it could have been stopped within fifteen feet at the rate it was going, the court said it was one of those cases where the facts speak the law, and that the accident was plainly due to the negligence of the driver.  But there is in the pending case no evidence that after the driver saw the train across the highway the automobile could have been stopped before striking the train.

In  a later case in Massachusetts, *Trask v. Boston, etc., Co.*, 219 Mass. 410, 105 *N. E.* 1022, the same principle was, on authority of *Gage v. Boston, etc., Co.* cited above, applied to facts similar to the case at bar, but where it was not shown that the automobile could have been stopped after the driver thereof saw the train standing across the highway and before striking it.  In the Trask Case the speed of the machine was from twenty to twenty-five miles per hour; it could have been stopped within forty or fifty feet; the headlights shone one hundred feet ahead; and the train was not seen by the driver until he was within forty feet of the train.  It was held by the court that the railroad company was not negligent in not giving warning by lights, or otherwise, of the presence of the train across the highway, and said:

"In order to charge the defendant with negligence it must be found that its employes, in the exercise of reasonable  care, would have known that on account of the darkness the cars upon the crossing were such an obstruction that people traveling along the highway, in an automobile, at a reasonable rate of speed, properly equipped with lights and carefully operated, would be liable to come into collision with them.  We are of opinion that upon the evidence the conditions shown were not such as to warrant a finding that the defendant was negligent in failing to provide lights or a flagman, or to  give other  warning.

"The defendant or its servants in the exercise of reasonable care, were justified in believing that travelers in automobiles properly lighted and driven at reasonable speed would observe the cars upon the crossing in time to avoid coming in collision with them.

In *Gage v. Boston, etc., Co., supra*, the following language was used, which is applicable to the facts here and to the case of *Trask v. Boston, etc., Co., supra, vis.:*

"The defendant's cars were rightfully occupying the crossing, and the trainmen were exercising due care so far as the management of the train in approaching and passing over the crossing is concerned.  The plaintiffs were not injured by being run into by the defendant's locomotive, but by running

into defendant's freight car as it was slowly passing over the crossing. They· were not injured by any mismanagement of the train. If it is conceded that the trainmen were chargeable with knowledge that automobiles were frequently driven over the crossing in the evening, were they also chargeable with knowledge that they were liable to be driven at such a rate of speed that they could not be stopped before reaching the crossing after the cars upon it became visible? Suppose instead of the place being the interesection of a highway and the railroad, it had been the crossing of two highways, and the plaintiffs had run into the   side of a  load  of logs which were being transported over the crossing; the driver of the logging team would have the same duty to exercise care for the benefit of the plaintiffs that the trainmen had, and the care he would be bound to exercise would be commensurate with the apparent , danger to travelers on the other highway caused by his occupation of the crossing with a heavily loaded team. If the driver of the approaching automobile could see the obstruction in time to avoid colliding with it, reasonable men could not find that it was the duty of the driver of the team to have a lighted lantern on the side of his load toward the automobile, as a warning that 'the crossing was occupied, or to use some other extraordinary precaution to convey that information. In deciding what, if anything, he ought to do, he would be justified in assuming that the approaching traveler would not unnecessarily run into his load of logs."

As argued by counsel for the plaintiff in error, other cases elsewhere have gone further than this. In 1909 the Wisconsin Supreme Court in *Lawson v. Town of Fond Du Lac*, 141 *Wis.* 57, 123 *N. W.* 629, 25 *L. R. A.* (*N. S.*) 40, 135 *Am. St. Rep.* 30, adopted a rule further defining the duties of drivers of automobiles There it was held that the driver of an automobile traveling on a dark and rainy night over a straight stretch of strange country· road was not exercising ordinary care when he drove his machine at such a rate of speed that he was unable to stop it within a distance that is within the clear range of his vision, or stated in another way, he was not using ordinary care if he could see objects but ten feet ahead and his speed was such that he could not stop within that distance. The words of the court are these:

"It seems to us, and we decide that the driver of an automobile, circumstanced as the driver of the car in which the plaintiff was riding, and operating it under such conditions as he operated his machine on the night of the accident, is not exercising ordinary care if he is driving the car at such a rate of speed that he cannot bring it to a standstill within the distance that he can plainly see objects or obstructions ahead of him. If his light be such that he can see objects for only a distance of ten feet, then he should so regulate his speed as to be able to stop his machine within that distance and if he fails to do so, and an accident results from such failure, no recovery can be had. This, it seems to us, is the minimum degree of care that should be required. Circumstances might arise where it would be reckless to drive at such a rate of speed, or even at a rate approximating it. We do not ground this rule on the

fact that we have a statute requiring automobiles to carry reasonably bright lights while being operated during the hours of darkness. Independent of any statute, and considering the character of these machines, we hold it would be negligent operation to run them without sufficient lights to enable the driver to see objects ahead of him in time to avoid them."

This case was approved and followed in *West Construction Co. v. White*, 130 *Tenn.* 520, 172 *S. W.* 301 (1914); *Knoxville, etc., Co. v. Vangilder*, 132 *Tenn.* (1915) 487, 178 *S. W.* 1117, *L. R. A.* 1916A, 1111; *Pietsch v. McCarthy*, 159 *Wis.* 251, 150 *N. W.* 483; *Raymond v. Sank County*, 187 *Wis.* 125; *Fisher v. O'Brien* (1917) 99 *Kan.* 621, 162 *Pac.* 317, *L. R. A.* 1917F, 610; *Solomon v. Duncan*, 194 *Mo. App.* 517, in *Missouri Court of Appeals* (1916) 185 *S. W.* 1141. But in Iowa the Court in *Kendall v. City of Des Moines*, 183 *Iowa*, 866, 167 *N. W.* 684, refused to follow the decisions in Wisconsin and Tennessee. So also the decision in *Corcoran v. New York*, 188 *N. Y.* 131, 80 *N. E.* 660, may not be in accord with the Wisconsin and Tennessee cases, but the facts in this last mentioned case are peculiar and the case does not throw much light on the question before this court.

[8]   But in order to rightly decide the pending case it is not necessary to adopt as broad a rule as that laid down in the case of *Lawson v. Fond Du Lac, supra*, for there is in this case no evidence showing negligence on the part of the defendant. The trainmen of the defendant had a right to assume that a reasonably careful person driving an automobile on that highway at that time would adopt such lights and rate of speed as that he could and would bring his automobile to a standstill within the distance that he could plainly see the train of the defendant, and so avoid running his machine into it, and therefore these employees of the defendant company were not negligent in failing to give warning by lights, or otherwise, of the presence of the train as an obstruction to the highway.

[9]   It, therefore, follows that if the defendant was not negligent it cannot be held liable for the injuries to either the driver or his guest in his private machine, whether the driver was careful or negligent. *Gage v. Boston, etc., Co., supra.*

Inasmuch as the court below should have instructed the jury

to render a verdict for the defendant below, for the reasons here stated, it is unnecessary to consider the other assignments of error.

An order will be made reversing the judgment in the court below, and directing that a judgment be entered for the defendant below, plaintiff in error, with costs in both courts.