## BALTIMORE & O. R. CO. v. MOORE.

(Circuit Court of Appeals, Third Circuit. June 11, 1926.)

### No. 3445.

1. **Appeal and error ⚖➤1050(1)—Admission of evidence, dignified by discussion, and emphasized by instruction to consider carefully, if erroneous, held not harmless.**

Admission of evidence in action for death concerning another's narrow escape at same railroad crossing, dignified by discussion, decided competent by admission, and emphasized by an instruction to consider carefully, if erroneous, *held* not harmless.

2. **Railroads ⚖➤347(4).**

In action for death of boy at railroad crossing, testimony of witness that, while driving milk wagon, he also had narrow escape at same crossing, *held* inadmissible.

In Error to the District Court of the United States for the District of Delaware; Hugh M. Morris, Judge.

Action by John Moore, administrator of the estate of Earl H. Moore, deceased, against the Baltimore & Ohio Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

John W. Huxley, Jr., of Wilmington, Del., for plaintiff in error.

Clarence A. Southerland, of Wilmington, Del., for defendant in error.

Before BUFFINGTON and DAVIS, Circuit Judges, and THOMSON, District Judge.

BUFFINGTON, Circuit Judge. In the court below, John Moore, a citizen of Delaware and administrator of Earl H. Moore, deceased, recovered a verdict against the Baltimore & Ohio Railroad Company, a corporate citizen of Maryland, for damages caused by said company by running over and killing the decedent. On entry of judgment thereon, the railroad sued out this writ of error. The facts and testimony pertinent to the decision of the single question to which we address ourselves in this opinion are these:

The decedent, a boy of 10, came on foot to a public road grade crossing of the railroad some 500 yards northeast of what was known as the Kiamensi crossing of the railroad. He was seen standing at the crossing waiting for a freight train to pass south bound on the track nearest him. Near this time an express was approaching north bound on the track beyond. Subsequently the boy's body was found north of the crossing at a distance variously testified to from 25 to 400 feet, and his cap from 25 to 110 feet. No one saw the accident. The plaintiff contended the boy was killed while attempting to follow the road across the tracks; the defendant that he was struck while trespassing along the track. At the trial, the court, over defendant's objection, admitted testimony of two witnesses who said they had narrowly escaped injury at the crossing, and the question involved is the alleged error of the court in so doing. Heller, one of these two witnesses, testified as follows:

"Q. Wouldn't you describe to the jury the conditions surrounding the lower crossing—that is, the crossing near Wilmington—in May, 1924, with regard to some one approaching from the north; is that clear, Mr. Heller? A. Yes; at the time of this accident, at the time that boy was killed, there was a lot of bushes on the right, and you practically had to get on the track to see the trains coming from Kiamensi and going to Wilmington; that was east-bound trains; you would practically be on the track before you could see that station at Kiamensi; that is a main station.

"Q. How did you happen to be familiar? A. I almost lost my harness there. I came pretty near getting hit with the train there.

\* \* \*

"Q. You say you are familiar with this crossing? A. Yes, sir.

"Q. Were the conditions at that crossing with respect to obstruction during a year prior to May 1, 1924, substantially the same as they were in May, 1924? A. Yes, sir; they were very bad.

"Q. During that year did you or not have a narrow escape at that crossing? A. Yes, sir.

"Q. State what experience, if any, with respect to the crossing, you had during the prior year. A. I had to travel that crossing day in and day out. I had to cross that crossing to deliver milk.

"Q. During that time, what, if anything, happened to you at that crossing? A. How is that?

"Q. What, if anything, happened to you at that crossing? A. Did anything happen to me?

"Q. Whether you had or nearly had an accident? A. I nearly had an accident."

[1] In refusing a new trial the court filed an opinion, in which it cited the cases pro and con, but did not decide, the question, saying it was convinced "that the admission of the testimony in question did not affect the substantial rights of the parties," and that consequently it does not afford a ground for a new trial. Judicial Code, § 269; 40 Stat. 1181 (Comp. St. Ann. Supp. 1919, § 1246). We cannot agree with this. The record shows there was a colloquy over the admission of the testimony, that the decisions cited by the court in support of its admission were called to its attention, and the judge, in admitting the testimony, said, and this was its final word to the jury on the subject, for no qualification of it was made in the charge: "Consequently, while I admit it for such value and weight that may be given it by the jury, *it is nevertheless evidence of such a character that should be considered by you most carefully in determining whether or not it tends to establish the dangerous character.*" Dignified by discussion, decided competent by admission, and emphasized as to be considered most carefully by the jury, we feel its admission, if wrong, must have injuriously affected the defendant's side of the case.

[2] This brings us to the question of its admissibility. No statute or decision of the state of Delaware—and, we add, of the other states comprising the Third Circuit—is shown which warrant the admission of such testimony. Are we constrained by federal decision to take a new departure, and now admit testimony such as was here received? In the first place, every damage case stands on its own particular facts. In this case, we have a pedestrian stopping at a grade crossing awaiting the passage of a freight train in one direction. We have a fast passenger train oncoming in the opposite direction on another track, which was hidden from view by the freight train. The danger confronting the boy was the grave danger which a double-track railroad crossing is to every one who walks over it, and, being necessarily dangerous, due care on the part of the railroad in operating, and the pedestrian in walking across, were necessary. In an issue based on this situation—a pedestrian stopped near the track and faced by a passing freight train; his view of the other track shut off, and with no knowledge of the approach of a fast express train on the other track; and the relative duties of both the boy and the railroad to both use due care—is such a situation, affected, enlightened, by the fact that a man who was driving a slow-going milk wagon had, under some undisclosed situation, a narrow escape at this crossing.

Turning to the federal cases cited by the judge in his opinion, we note that the only one of the federal decisions cited that is binding on the federal courts of this circuit is that of the Supreme Court of the United States in Columbia v. Arnes, 107 U. S. 519, 2 S. Ct. 840, 27 L. Ed. 618. A study of that case shows that, far from laying down any general principle of the admissibility of other accidents caused by the negligent operation of trains at crossings, lawful and maintained in proper form, that the Supreme Court had before it a case involving the negligent maintenance by the city of a sidewalk which it thus describes: "Twelve

feet of the sidewalk was cut down, thus leaving an abrupt descent of about 2 feet at a distance of 12 feet from the curb. At this descent—from the elevated to the lowered part of the sidewalk—there were three steps, but the place was not guarded, either at its side or end." The testimony involved, admission of which was charged as error, was that of a city policeman, who saw the injured man fall at this point of the sidewalk, and testified that he had seen other people stumble there, and as many as five fall.

Recognizing the principle that testimony of other accidents is inadmissible "where it tended to introduce collateral issues and thus mislead the jury from the matter directly in controversy," the court called attention to the fact that by the pleading "the character of the place" was in issue, and these former accidents, as it said, "were proved simply as circumstances which, with other evidence, tended to show the dangerous character of the sidewalk in its unguarded condition. The frequency of accidents at a particular place would seem to be good evidence of its dangerous character; at least, it is some evidence to that effect. Persons are not wont to seek such places, and do not willingly fall into them. Here the character of the place was one of the subjects of inquiry to which attention was called by the nature of the action and the pleadings, and the defendant should have been prepared to show its real character in the face of any proof bearing on that subject." In addition, attention was called to the fact that notice was thereby brought home to the city as follows: "Besides this, as publicity was necessarily given to the accident, they also tended to show that the dangerous character of the locality was brought to the attention of the city authorities."

It will thus be seen that what the court had before it was a sidewalk fault, about which fault there was no dispute, and that a man walking along it as everybody walked had the same fall that other walkers had. The issue was the negligence of the city in maintaining such an abrupt break in the sidewalk, and negligence was established by two things: First, its liability to cause falls; and, secondly, the negligence of the city in not changing it. The testimony of the city's policeman tended to show the frequent falls incident to its ordinary use by passers-by; and, second, notice to the city through the publicity of such falls and the knowledge of its servant, the policeman.

A study of this case and of the authorities cited by the Supreme Court in its support shows that the basic thing in each of them was that a specific physical defect was a negligent structure, whose existence, if proved, constituted the negligence on which the case was based. Noting each of them, Quinlan v. Utica, 11 Hun, 217, was for the failure of the city to repair a sidewalk, and to prove the sidewalk required repair, and testimony was admitted to show other pedestrians had slipped and fallen on it at the place the plaintiff had. In City of Chicago v. Powers, 42 Ill. 169, 89 Am. Dec. 418, the negligence involved was the failure of the city to provide lights to the approach of its swinging bridge, where the deceased had stepped off and been drowned, and testimony was admitted that another person had done the same thing; the court saying: " *   *   * It would tend to show a knowledge on the part of the city that there was inattention on the part of their agents having charge of the bridge, and that they had failed to provide further means for the protection of persons crossing on the bridge." In Delphi v. Lowery, 74 Ind. 521, 39 Am. Rep. 98, the street ran up to a canal. The city had failed to place a guard rail, and the testimony admitted was of other accidents at the same place, "for the purpose of showing notice to a municipal corporation that there is a dangerous place within or near the limits of the highway." In Kent v. Lincoln, 32 Vt. 597, there was a water bar across a highway, of such improper construction as to injure the plaintiff while driving across it. Testimony of others was admitted to show that the water bar jolted them from their seats while driving over it.

In House v. Metcalf, 27 Conn. 637, the accident was caused by a large exposed overshot wheel located near a highway, which frightened plaintiff's horse and caused a runaway, and testimony of another runaway caused by fright at the wheel was admitted; the court holding: "And because the fact to be established, to wit, that the wheel was an object of terror to horses, was directly involved in the issue on the record, and the evidence objected to tended to establish it, and therefore to prove the issue, the defendant was bound to come prepared to meet it." In Hill v. Portland, 55 Me. 443 (92 Am. Dec. 601) the action was for a runaway caused by the blowing of a locomotive engine, which the railroad was accustomed to do when about to start trains from a station, and evidence was admitted to show that the witness' own horse at that time, and the

horses of a great many others at other times, were also frightened; the court saying: "This was pertinent to the issue, and bore directly on the nature, extent, and actual effect of the noise made by the defendants' engine." In Calkins v. Hartford, 33 Conn. 57, 87 Am. Dec. 194, where a ridge of ice extended across a sidewalk, the converse of the proposition was involved, and the court said: "If the plaintiff had offered evidence to show that a number of persons had actually slipped upon it, it would have been strong proof that it was in a slippery and dangerous condition. Men always act on such evidence in deciding whether they will risk their limbs or not. Why, then, should not proof that a number of persons passed over it, and did not slip, be admitted as tending to show that it was not in a slippery condition?" In Darling v. Westmoreland, 52 N. H. 401, 13 Am. Rep. 55, the issues involved were, first, whether a pile of lumber near a bridge frightened horses, and whether the bridge railing was sufficient. It was there held that evidence of other horses taking fright at the lumber pile was admissible. Augusta v. Hafers, 61 Ga. 50, 34 Am. Rep. 95, involved an open cellarway on a sidewalk, and evidence of other persons falling into it was held competent.

Based on this case of the Supreme Court of the United States as a warrant, it is now sought in this present case to justify the admission of testimony of a wholly different character. In the cases cited the issue was the dangerous character per se of the offending article, the abrupt step in the sidewalk, the cross-waterway in the road, the open cellar door, the ridge of ice across the sidewalk, the open unlighted drawbridge approach, the startling and needless shriek of a locomotive, the high, moving, overshot water wheel near the highway, the lumber pile near the unguarded bridge, in all of which the negligent or nonnegligent character of a concrete object was involved, and where the testimony admitted went to the faulty, or nonfaulty, character of the structure. But in the present case we have a public road and railroad intersecting, both properly constructed; both pedestrians and trains can lawfully use the crossing, and the issue here is not the character of the crossing, but the alleged negligent use of the crossing by the railroad. The testimony here admitted was that, in the opinion of a witness who attempted to cross in a wagon, he had had a narrow escape, and the jury told that this was "evidence of such a character that should be considered by you

most carefully in determining whether or not it tends to establish the dangerous character of the crossing." In excluding such testimony a court is certain it is adhering to the issue raised by the pleadings, while in admitting it a court is uncertain as to how far it may influence a jury and divert attention from such pleaded issue.

The experience of courts is that there is a constant danger, in damage cases, of juries deciding them on irrelevant issues, and we have no inclination, in this circuit, to increase that danger by diverting a jury's attention from the accident case before them to some other accident.

We are consequently constrained on this single ground to reverse this case, which otherwise was faultlessly tried.