HARRY G. KEFFALA, Plaintiff Below Appellant, v. WILLIAM J. SATTERFIELD, Defendant Below, Respondent.

(*November* 17, 1948.)

LAYTON, J., sitting.

*Daniel L. Herrmann* (of Lynch and Herrmann) for Plaintiff.

*William Prickett* for Defendant.

Superior Court for New Castle County, No. 229, September Term, 1947.

LAYTON, J.

Defendant's first point is that it is the law of this State

---

[1] Hereafter in this opinion I shall refer to this principle of law as "driving within the range of the headlights".

that a motorist must drive within the range of his head-lights. If so, that is, of course, an end to the matter. He relies on *Philadelphia & R. R. Co. v. Dillon*, 1 *W.W.Harr.* 247, 114 *A.* 62, 15 *A.L.R.* 894, and *Burton v. Delaware Poul-try Co.* (*Del.Superior Ct. unreported*). In the Dillon case a motorist ran into an unlighted freight car which was standing on a grade crossing. The collision occurred on a relatively clear night. The Court held that the train was lawfully obstructing the highway and that the absence of lights upon its cars or other signals was not of itself evi-dence of negligence because it could be assumed that a care-ful motorist would have his machine so under control as to be able to stop when the obstruction came within the range of his headlights. The exact meaning of the Dillon case has frequently been the subject of speculation and it must be ad-mitted that certain language appearing in the opinion is susceptible of the interpretation placed upon it by Defend-ant.

However, it is difficult for me to conceive that the hold-ing in that case where the obstruction was lawful, of great size, the road straight and the night clear, can be taken as determinative of this case where the obstruction was a rel-atively small, dark colored automobile, without tail light in violation of the statute, and at a virtual standstill upon the highway during what may well have been a hard snow storm. Moreover, I am inclined to believe, though not cer-tain, that the superficial inconsistencies in the language of the Dillon case are reconcilable for this reason. While all railroad grade crossings are inherently dangerous, some are more hazardous than others because of physical or geograph-ical conditions. Thus, where the highway approach to a railroad crossing is straight and level it has been repeatedly held that a railroad company lawfully operating its cars thereon is not negligent in failing to give warning other than required by law. The Dillon case is illustrative of this

line of decisions. And this is so even though the crossing is obscured by snow or mist. *Jones v. Pennsylvania R. Co.*, 5 Terry 486, 61 *A*. 2d 691. But when unusually hazardous conditions are present so that the approach to the crossing is obscured, there is a line of cases holding that it becomes the affirmative duty upon the railroad to give additional warning by lights or otherwise, because of the increased peril to motorists. *Martin v. Baltimore & P. R. Co.*, 2 *Marv*. 123, 42 *A*. 442. For instance, suppose an approach to a railroad crossing where the road turns sharp left and goes abruptly down hill just before crossing the tracks. Even a careful motorist might be almost on the crossing before his lights could illuminate it. Or suppose that instead of a standing train, the Defendant had left a very small object such as a "hand car" standing on the crossing. In the rare cases of this sort it might be reasonable to assume, although I do not so decide, that even though the obstruction were lawful, some additional warning[1] might be required. In other words, though the train or hand car were lawfully on the tracks, because of the added peril to the motorist just supposed, it might be said that the railroad company could not assume that a careful driver would be able to see the obstruction and stop in time to avoid collision. Therefore, despite the lawfulness of the obstruction, the foreseeability of danger might be so increased as to give rise to a duty upon the part of the railroad to give additional warning to motorists. Returning to the Dillon case, I believe that the language of the Court in question was merely an explanation why Defendant was free from negligence rather than a holding, frequently misinterpreted, that a motorist is guilty of contributory negligence whenever he runs into an obstruction in front of him at night.

Nor does the Burton case sustain Defendant's conten-

---

[1] Other than the stop, look and listen sign which is all that the law requires in this State.

tion in this respect. There a motorist collided with the rear of a moving truck having no tail lights. The night was clear. Plaintiff was non-suited. The case is unreported but the charge is preserved. The pertinent portion is as follows:

"The law, generally, requires that the operator of a motor vehicle shall not operate the vehicle at a higher rate of speed than will permit him to stop it within the limits of his range of vision. * * *. It is negligence not to see what is clearly visible where there is nothing to obscure the vision of the driver, * * *".

Clearly the Superior Court did not lay down an arbitrary rule of law to the effect that, in every case, and regardless of the circumstances, a Plaintiff is guilty of contributory negligence in colliding with an obstruction in the road.

The Delaware rule not being as Defendant argues, it becomes necessary to examine the law in other States bearing on the question. Each counsel has urged that the majority of the cases support his contention. Numerous cases have been cited and in at least six States there seems to be a conflict in the authorities. I have attempted to resolve the conflicting decisions and have concluded after a hasty examination of most of the cases that in 16 States[1] the law requires a motorist to drive within the range of his lights, while in 14 States[2] the Courts have reached a contrary re-

---

[1] Ala., California, Indiana, Louisiana, Michigan, Minn., Miss., New York, Nebr., S. Dak., Tenn., Texas, Utah, Wis., Florida

[2] Arizona, Col., Conn., Ill., Iowa, Kan., Mass., N. Carolina (C.C.A.4th), New Jersey, Ohio, Oregon, Vermont, W. Virginia, Washington

sult. However, I favor the reasoning of the cases in the latter group which refuse to hold as a matter of law that a motorist under every circumstance must drive within the range of his lights. Illustrative of these is *Moorehouse v. City of Everett,* 141 *Wash.* 399, 252 *P.* 157, 160, 58 *A.L.R.* 1482, where the Supreme Court of Washington stated:

"The rule contended for is, in our opinion, entirely too broad, and, if put in effect, would have very serious and unjust results. It loses sight of the fact that one driving at night has, at least, some right to assume that the road ahead of him is safe for travel, unless dangers therein are indicated by the presence of red lights; it does not take into consideration the fact that visibility is different in different atmospheres, and that at one time an object may appear to be 100 feet away, while at another time it will seem to be but half that distance; it fails to consider the honest error of judgment common to all men, particularly in judging distances at night; it loses sight of the fact that the law imposes the duty on all autos traveling at night to carry a red rear light and the duty of all persons who place obstructions on the road to give warning by red lights or otherwise; it fails to take into consideration the glaring headlights of others and the density of the traffic and other like things which may require the instant attention of a driver; it does not take into consideration that a driver at night is looking for a red light to warn him of danger, and not for a dark and unlighted auto or other obstruction in the road."

The Fourth Circuit Court of Appeals had occasion to examine this same question in a case arising under the North Carolina law. *Morris v. Sells-Floto Circus, Inc.,* 65 *F.*2d 782, 784. There the law was summarized as follows:

"An examination of the numerous decisions on this question leads us to the conclusion that the better rule is that except where the evidence is so conclusive that there

could be, in the minds of reasonable men, no doubt as to the plaintiff's negligence contributing to the injury, that question should be left to the jury. * * *

* * * * * *

"In reaching our conclusion that the better rule is to leave the facts of each particular case to the jury, unless the evidence is clear and unmistakable, we are influenced by a number of reasons.

"To hold that persons traveling a public highway in an automobile, at night, must at all times be ready to stop instantly, would be to lay down a rule that would greatly impede traffic. The rate of progress would be so slow that all travel would be practically prohibited. Those using the public highway have a right to place some reliance upon the law prohibiting obstruction of the highway, unless the obstruction be marked by a light, as required by the North Carolina statute. Such a holding by the courts would encourage the lawless placing of obstructions on the highway by persons inclined to be careless or lawless and would make travel over the highways in the nighttime much more hazardous than it now is or should be; would be contrary to the spirit of modern progress; and would virtually repeal statutes requiring the carrying of lights by vehicles on the highways, as far as any civil liability is concerned.

"The defendant was admittedly negligent, and was acting in violation of the state statute in moving the wagon over the highway without proper lights. The evidence that the plaintiff was guilty of negligence and that that negligence contributed to the accident is not so conclusive that fair-minded and intelligent men could not differ as to the conclusion to be reached. On the contrary, a study of the evidence convinces us that reasonable minded men might well differ as to whether the plaintiff was guilty of contrib-

utory negligence in the instant case. The questions should have been submitted to the jury."

When subjected to scrutiny the proposition that a motorist must drive within the range of his lights is not sufficiently meaningful to serve as the basis for a rule of law. The size, color and location of the obstruction, rate speed of the motorist, existing atmospheric conditions, the type of highway and amount of traffic thereon are all factors too variable to solve by the application of a single common denominator such as the proposition of law which Defendant seeks to establish.

The subject of Torts is no exception to the rule that law is not an exact science. Overlapping principles of law and varying factual situations frequently produce inconsistent results. Thus, as Defendant argues, it is hardly logical that a rule of law should result in a Plaintiff not being able to recover when he collides with an obstruction lawfully on the highway but not recover if the obstruction is unlawful. In the final analysis, as Defendant points out, it is the ability or inability on the part of the motorist to see and avoid the obstruction, not the legality or illegality of its existence, which should point the answer. On the other hand, it might well be noticed that if the rule which Defendant urges were adopted, the time honored principle that a motorist has a right to assume that others will be using the highway lawfully would cease to have any force or meaning.

Where, as here, the philosophies of the Courts are in sharp conflict, the only sensible course is to adopt an answer dictated by practical experience. I decline, therefore, to adopt a rule of law which would preclude recovery under all circumstances where a motorist collides with an object on the highway during the nighttime. In this case where there was evidence that a snow storm was raging and

vision obscured, that Plaintiff was operating his car slowly and Defendant had deliberately pushed his unlighted car out upon a main highway, thus creating a dangerous hazard to traffic, I am of the opinion that the question whether Plaintiff was contributorily negligent in colliding with Defendant's automobile was for the jury to decide. Defendant's first ground of contention for a re-trial is accordingly declined.

■ However, I am of the opinion that error was committed in another respect which justifies the granting of a new trial. Volume 43 Delaware Laws, Chapter 251, provides:

"Stopping on Highway:— (a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; * * *."

But I ignored evidence that Defendant's vehicle was in motion and instructed the jury as a matter of law that Defendant had violated the Section. Whether Defendant violated the above cited section of the Motor Vehicle Laws was for a jury to decide.

The remainder of the above quoted section prohibits parking on a highway unless there is at least 20 feet clearance on the remainder of the highway. Defendant suggests error in the inclusion of this portion of the section in the charge because no causal connection was shown between the violation and the collision. Defendant may very well be correct in his contention but in view of the result, I see no occasion to discuss this point.