255 F.2d 205
 70 A.L.R.2d 158
 Jehu P. EVANS et al.
v.
The PENNSYLVANIA RAILROAD COMPANY, Appellant.
Margaret Elizabeth JESTER, Widow,
v.
The PENNSYLVANIA RAILROAD COMPANY, Appellant.
Noah Kenneth COLLINS
v.
The PENNSYLVANIA RAILROAD COMPANY, Appellant.
Leland Kenneth PHILLIPS,
v.
The PENNSYLVANIA RAILROAD COMPANY, Appellant.
 Nos. 12410-12413.
 United States Court of Appeals Third Circuit.
 Argued March 31, 1958.
Decided May 2, 1958.
 
 James L. Latchum, Wilmington, Del. (Wm. S. Potter, Wilmington, Del., on the brief), for appellant.
 James M. Tunnell, Jr., Georgetown, Del., for appellees.
 Before KALODNER and HASTIE, Circuit Judges, and LAYTON, District judge.
 LAYTON, District Judge.
 These are four appeals by defendant from judgments entered in favor of the plaintiffs by the United States Court for the District of Delaware. They are companion cases arising out of a collision between an automobile in which the plaintiffs were passengers and defendant's train. Jurisdiction was based on diversity of citizenship and Delaware law is controlling. The actions were consolidated and tried by the Court. Those appeals were also consolidated and argued together.
 Very briefly, the facts are these. On the dark, rainy evening of May 20, 1955, five young men were proceeding southerly on Route 14, Sussex County, Delaware, in a car driven by Daniels.[1] Ahead lay the hamlet of Nassau intersected by the railroad crossing of the defendants. The approach of trains from the west (to the right of plaintiffs' machine) is largely concealed by an extensive orchard, buildings and shade trees. As plaintiffs' machine was between 100 ft. to 160 ft. of the tracks, Daniels suddenly perceived defendant's train slowly entering the crossing and slammed on the brakes but was unable to prevent a collision which resulted in death to Jester, terrible injuries to Evans and minor injuries to the others.
 The trial judge found that the crossing in question was extremely hazardous because of (1) the large volume of automotive traffic using the highway, (2) the irregular scheduling of trains, (3) the angle at which the track and road meet, (4) obstructions concealing the approach of the trains and (5) the archaic lighting system on defendant's freight trains. Defendant strenuously attacks the bases for each of these findings. However, we deem it unnecessary to examine in detail the reasoning of the trial judge as to why defendant was negligent, for, in the final analysis, if it was negligent in only one respect and that negligence was the, or one of the, proximate causes of the accident, then liability necessarily follows. The answer to this inquiry must lie in an examination of the applicable Delaware law.
 Perhaps the leading case in Delaware dealing with this question is Roberts v. Maryland, Delaware and Virginia R.R. Co., frequently referred to as Lofland's Brickyard Crossing Cases, 5 Boyce 150, 28 Del. 150, 91 A. 285, 287. There the Superior Court said:
 'It is also well established by innumerable authorities that at some crossings other warnings in addition to the statutory warnings will be required of a railroad under peculiar circumstances or on extraordinary occasions. A railroad company is required to operate its trains with the care and prudence which the peculiar circumstances of the place reasonably require. This is the rule of the common law and is also the law in this state.
 'A railroad crossing ordinarily is a place of great danger, and if at the crossing there are obstructions of such a nature that a traveler on the highway approaching the crossing is prevented from seeing an approaching train, or if the peculiar conditions surrounding the crossings are of a nature that a traveler using due care and caution likewise is prevented from hearing the blowing of a whistle on the approaching locomotive, the danger of the crossing is increased, and the degree of care on the part of the railroad to warn travelers on the highway of the approach of trains is correspondingly increased.'
 And, as said by former Chief Justice Lore in Reed v. Queen Anne's R. Co., 4 Pennewill, Del., 413, 57 A. 529, 531:
 'If the crossing be in a thickly populated or much frequented locality, or if the view of the crossing be obstructed, or exceptionally dangerous from any cause, it is the duty of the company to exercise greater care and caution, proportioned in every case to the danger, so as reasonably to avoid accident.'The same thought was expressed by former Chief Justice Layton in Leedom v. Pennsylvania R. Co., 3 Terry 186, 42 Del. 186, 29 A.2d 171, 173:
 
 
 1
 'At ordinary grade crossings, the sounding of the whistle, or perhaps, the ringing of the bell, may be a sufficient warning. At peculiarly dangerous crossings, some more efficient means of warning, or even an obstruction to passage, might be necessary.'
 
 
 2
 In short, the Delaware law is that all railroad crossings are dangerous, requiring reasonable warning to the motorist of their existence, and the more dangerous the crossing, the greater the degree of warning is demanded.
 
 
 3
 Now, here, we are dealing with an unconcealed crossing, that is, a crossing the approach to which for some distance is a straight, level road. Thus, the several warning signs[2] together with the ringing of bells and the train whistle might well be regarded as sufficient warnings under the circumstances but for one important fact-- the approach of the train from plaintiffs' right was virtually concealed. Whether or not this circumstance required additional warning is, under the Delaware decisions, traditionally a question for the jury. In support of this conclusion, we find the following language from Gray v. Pennsylvania R. Co., 3 W.W.Harr. 450, 33 Del. 450, 139 A. 66, 75, particularly apt:
 
 
 4
 'If there existed at the crossing in question, at the time of the accident, unusual dangers to persons approaching on the highway, it was the duty of the company to maintain at the crossing such means and agencies for the avoidance or prevention of injury as were reasonably required by the unusual situation. A railroad crossing, as we have said, is regarded as a place of danger, and particularly so if it is in a city or populous town, where existing conditions may make the crossing unusually dangerous. It is for the jury to say whether the crossing in question was such a crossing. The Court cannot say, as a matter of law, what particular means or agencies the company should employ in such case to notify persons approaching the crossing of the danger there existing, but we say it is the duty of the company to employ such means or agencies as are reasonably necessary to give timely and sufficient notice. What are the particular means or agencies that should be employed, and whether they have been employed, are questions for the jury to determine from all the evidence.'
 
 
 5
 Accordingly, the finding of negligence by the trial judge on this issue will not be disturbed.[3]
 
 
 6
 But, by way of further defense, defendant insists that it is not liable because here the train had pre-empted the crossing to a point where the plaintiffs' driver, in the exercise of reasonable care and caution, should have seen it and averted collision. This requires some consideration of another line of Delaware cases also dealing with railroad crossings. In Philadelphia and Reading Ry. Co. v. Dillon, 1921, 1 W.W.Harr. 247, 31 Del. 247, 114 A. 62, 65, 15 A.L.R. 894, an unlighted freight car was left standing across a railroad crossing at night and plaintiff crashed into it with his automobile. The Court held that the defendant was not liable, saying in part:
 
 
 7
 'The train was lawfully across the highway. The absence of lights on the train * * * is the negligence charged. It is not in itself negligence for a railroad company to allow a train of cars to remain a reasonable or lawful length of time across a highway. * * * The absence of such lights or warning signals does not of itself prove that the company was negligent as to the plaintiffs. * * * There was no statute or ordinance which required such lights or warning, or regulating the speed of or lights on the automobile.'
 
 
 8
 And in Jones v. Pennsylvania R. Co., 5 Terry 486, 44 Del. 486, 61 A.2d 691, the Delaware Superior Court applied the principle of the Dillon case in denying relief to a plaintiff who drove his car into the side of an unlighted moving freight train at night during a snow storm. There the approach to the crossing was straight and unobstructed and the freight cars had been passing over the crossing for some time before the collision.[4]
 
 
 9
 The trial judge in the case at bar refused to apply the principle of the Dillon and Jones cases, stating:
 
 
 10
 'Defendant is not absolved from liability flowing from its violation of the duty owed to plaintiffs by reason of the general rule that a person who drives into the side of a train standing or moving over a grade crossing, cannot recover from the Railroad for injuries received. This general rule has no application to the present facts. Where applied by the Delaware courts, there were not extraordinary or unusual circumstances rendering the crossing peculiarly hazardous. Further, where as here, a matter of a few seconds determined whether the car hit the train or the train the car, application of the general rule would result in reward to the winner of the race to the intersection. The result becomes even more intolerable when it is realized the rationale of the general rule sought to be applied by efendant is that ordinarily, the presence of the train upon the crossing is adequate notice to travelers that the crossing is pre-empted. In this case the train was not on the crossing so as to provide notice to highway travelers. Rather, it was in the act of completely obstructing the crossing when noticed by Deniels.'
 
 
 11
 We agree. As the trial judge correctly observed, this is not the Dillon case nor is it the Jones case. Here the approach of the train was concealed and the car and train collided while the latter was in the act of entering the crossing. In the two cases just cited, the approach of the train was not concealed; it had been standing for some time (as in Dillon) or proceeding across the crossing for some time (as in Jones). In our view, the facts of the cases just discussed are clearly distinguishable from this case.
 
 
 12
 Thirdly, defendant takes exception to the admission into evidence in this case of the fact of previous accidents at the same crossing. The trial judge expressly stated that his ground for the admission of this evidence was not that it tended to show negligence on the part of the Railroad, but, rather, that it constituted notice to the defendant of the dangerous character of the crossing. While the whole field bearing on the admissibility of evidence of prior accidents is a muddy one, and the admission of such evidence for the purpose of showing negligence is of the most doubtful competency, Baltimore & O.R. Co. v. Moore, 3 Cir., 13 F.2d 364, nevertheless, this Court did, in De Eugenio v. Allis-Chalmers Mfg. Co., 3 Cir., 210 F.2d 409, 414, consider evidence of this kind as competent to show notice to the defendant of the 'dangerous character of the machine.' Accordingly, we find no error in the action of the trial judge in this respect. Nor do we feel that the Court below erred in admitting evidence of these prior accidents at the same intersection under circumstances not exactly similar[5] to those in the instant case. All these accidents happened at this particular crossing, took place at night and occurred between one of defendant's trains and an automobile. Under such circumstances as these, and where the offer of evidence is to prove, not negligence, but notice of the dangerous character of the crossing, the strictness of the requirement of similarity of conditions has frequently been relaxed. As stated by McCormick, Evidence (Horn Book Series), page 352:
 
 
 13
 'Since all that is required here (where the offer is for the purpose of showing notice) is that the previous injury should be such as to attract the defendant's attention to the dangerous situation which resulted in the litigated accident, the strictness of the requirement of similarity of conditions imposed when the purpose is to show causation of danger is here much relaxed.'
 
 
 14
 Compare McCormick v. Great Western Power Co., 214 Cal. 658, 8 P.2d 145, 81 A.L.R. 678; City of Taylorville v. Stafford, 196 Ill. 288, 63 N.E. 624.
 
 
 15
 Defendant's final exception is to the allowance by the trial judge of $11,594.00 to certain of the plaintiffs in the amounts hereinafter set out:
 
 
 16
 To Evans, for the reasonable
value of nursing service
rendered him by his parents but
for which no bill was rendered
because performed
gratuitously $5,940.00
To Evans, an amount of
money representing a reduction
by his doctors in the size
of their bill rendered him due
to his impecunious
circumstances 750.00
To Mrs. Jester, a figure
representing her estimate of
the amount which she, as widow,
would have to advance to
rear her child 4,904.00
 
 
 17
 To the extent of the allowances just stated, we decide that the defendant's exceptions are well taken. It is our function in this litigation to ascertain and apply the law of Delaware. As we understand the law, a plaintiff in this sort of case can recover damages for services rendered only to the extent that he has paid for them or incurred an actual liability therefor. Girardo v. Wilmington Philadelphia Traction Co., 5 Boyce 25, 28 Del. 25, 90 A. 476; Kane v. Reed, 9 Terry 266, 48 Del. 266, 101 A.2d 800. Here the services to the plaintiff Evans rendered by his mother and father were gratuitous. Regrettably, they cannot be recovered. The same principle applies to the sum of $750.00 by which his physicians gratuitously reduced their bill.
 
 
 18
 A different principle applies to the allowance made for the rearing of the Jester child. In Turcol v. Jenkins, 1956, 10 Terry 596, 49 Del. 596, 122 A.2d 224, the Court took occasion to review most of the Delaware decisions bearing on this subject. Despite the rather broad language of the statute, it concluded that the true measure of damages in a widow's action was such sum of money which, when invested, would represent the amount she would have received from her husband if he had lived his life expectancy. There is a fairly clear inference to be found in Wood v. Philadelphia, B. & W.R. Co., 1 Boyce 336, 24 Del. 336, 76 A. 613, that such a recovery must not include any allowance for a child and the very recent Delaware decision of Williams v. Chittick, Del.Sup. 1958, 139 A.2d 375, appears to be direct authority for the proposition.[6] Accordingly, the award must be set aside.
 
 
 19
 The case will be remanded to the Court below with instructions that the judgment be reduced by the sum of $11,594.00. In all other respects, the judgment will be affirmed.
 
 
 
 [1]
 Daniels did not bring an action as the result of this accident
 
 
 [2]
 There were five warning signs at various distances from the crossing. They were 'Reduce Speed', and 'Speed Limit 35', 'Nassau', a circular railroad warning and a highway market painted on the surface of the road
 
 
 [3]
 The trial judge found that the four passengers, appellees here, were not guilty of contributory negligence. This finding, or conclusion of law, is not challenged on this appeal. In Delaware, negligence of a driver is not imputed to his passengers. Bennett v. Barber, 1951, 7 Terry 132, 46 Del. 132, 79 A.2d 363
 
 
 [4]
 It is apparent that the Superior Court could see no substantial difference between a standing unlighted freight car and an unlighted moving freight train which had been passing over the crossing for some moments before plaintiff came along. The facts that the approach to the crossing was straight and the freight train had been passing over the crossing for some moments prior to the crash did not appear in the complaint but were brought out at the argument. Through inadvertence they were not clearly stated in the opinion
 
 
 [5]
 In one of the prior accidents, the train was proceeding from East to West and, in another, the automobile from South to North
 
 
 [6]
 The Court charged the jury in part: 'The damages allowed by our statute as interpreted by the Courts is on the basis that the suit in this case is for the loss sustained by the wife, herself, and in considering the damages, therefore, you are not to take into consideration the children.' Unfortunately, the trial judge did not have the advantage of this opinion which was handed down after his own decision was filed