53 N.J. Super. 76 (1958)
146 A.2d 524
ANNA MENGLE AND MATTHEW E. MENGLE, PLAINTIFFS-RESPONDENTS,
v.
HOWARD J. SHIELDS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 24, 1958.
Decided December 1, 1958.
*78 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Albert Boyd Sharp argued the cause for appellant.
Mr. Charles A. Cohen argued the cause for respondents (Mr. E. George Aaron, attorney; Mr. Cohen, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant appeals from a judgment in plaintiffs' favor entered by the Superior Court, Law Division, following a trial without a jury in an automobile negligence case wherein Mrs. Mengle sought damages for personal injuries and her husband sued per quod.
The evidence bearing upon the occurrence of the accident is contradictory. Neither witness gave a sharply definitive account of the mishap, and the record is made even more unsatisfactory because Mrs. Mengle and defendant constantly referred to a blackboard diagram (not reproduced) and to *79 a photograph (reproduced) without verbal explanation of just what they were describing. The loss in clarity and significance of some of their testimony as to just how the accident happened could have been avoided by the simple process of trial counsel or the court briefly noting for the record exactly what was being referred to. Such clarification is to be encouraged in the interest of preserving a clearly understandable record on review. The trial court is in the fortunate position of being able to follow the gestured explanations of the witnesses; we have only the printed page before us.
The first point of appeal is that the evidence does not support the verdict  specifically, there was no adequate basis in the record for rejecting defendant's testimony that he had come to a complete stop prior to plaintiff's coming into contact with his left front fender. The accident happened where Helena Avenue runs into Kenilworth Avenue, Delaware Township, forming a T intersection. Mrs. Mengle testified that she was crossing Kenilworth Avenue from its intersection with Helena Avenue; that she had looked both ways before starting to cross and had seen no one coming, and that she had taken six or eight steps before being struck by defendant's car. Asked on cross-examination if she had seen the car, she replied, "I didn't see anything, it came so fast; I screamed, I didn't know what to do with myself." Defendant, in turn, testified that he was making a right-hand turn from Helena Avenue into Kenilworth Avenue when he saw Mrs. Mengle walking in the street, and as she started to cross he came to a full stop; "she turned around and * * * actually hit the fender of my car and actually jumped in the air, the shock of just seeing the car, and then she actually fell down into the street * * *." After commenting on the testimony, the trial judge concluded that defendant's negligence in making the right-hand turn was the proximate cause of the accident.
Negligence was clearly a factual issue for resolution by the trial judge. There is enough in the record to support his finding of defendant's negligence. Physical *80 contact with defendant's fender is admitted. It is difficult to accept defendant's story that he saw Mrs. Mengle in full view 25 feet away as he approached Kenilworth Avenue; that he had half completed his turn from Helena Avenue and was at full stop, and that she suddenly walked directly into his left front fender, jumped two feet into the air and then landed on her face, suffering the injuries hereinafter detailed. But even if we were to take defendant's story at face value, it would not necessarily preclude a finding that plaintiff was injured as a result of his negligence. The trial judge was free to determine, as his oral findings would indicate, that defendant's car came upon plaintiff without warning, so suddenly and so closely that she was startled and moved violently against the fender, thereby sustaining injuries.
Defendant next contends that the evidence does not support the award of $2,750 to Mrs. Mengle and $921.63 to her husband for out-of-pocket expenses. Mrs. Mengle's injuries included a cerebral concussion; bruises about one eye, which was closed; facial lacerations; abrasions of the kneecap and the dorsal of the left foot; bruises of the left leg and a small cut on the foot; her nose was swollen and tender; the inside of her mouth was lacerated; her dental plate fractured, and her lower teeth, already somewhat loose, further loosened so that they had to be removed. She was hospitalized about ten days. At the trial she complained of a pain at the back of her head where she was hit, severe headaches, and pain in raising and lowering her arms, which prevents her from doing heavy housework. The treating physician testified that she has developed severe headaches and a state of anxiety.
Defendant does not specifically argue that the award of $2,750 is excessive, but claims that the method used in arriving at that figure was incorrect. The trial judge had remarked that since the out-of-pocket expenses were $1,023.65, it meant that "this woman must have sustained some injuries." Defendant contends that the court used this figure as a basis for computing damages for pain, suffering and physical *81 injuries. Consideration of the trial judge's oral findings as a whole does not indicate that his reasoning proceeded in the manner defendant says it did. The court's comment can be given no broader significance than that which appears on its face, namely, that the out-of-pocket expenses bespeak the fact that the woman must have sustained some injuries. We find the award of $2,750 not excessive.
The real argument as to damages concerns the award to Mr. Mengle. The out-of-pocket expenses totalled $1,023.65, and the court reduced this to $921.63 by allowing a one-third offset on the $432 bill of Dr. Burnell, the treating physician. Obviously, one-third amounted to $144, and not the $102 computed by the court.
Mrs. Mengle was an epileptic, and Dr. Burnell had for many years been treating her twice a week for that condition and had it well under control. After the accident Mrs. Mengle continued to visit Dr. Burnell twice a week to be treated for her injuries and their consequences. On these visits she was also given medication to control or inhibit her epileptic condition. There is no claim that the accident worsened the epilepsy, or that the doctor's bill of $432 was unreasonable. Defendant contends, however, that since Mrs. Mengle would in any event have had to continue her epilepsy treatments, he should not be charged with any part of the bill merely because the doctor also treated her for the aftermaths of the accident.
The fact is that Dr. Burnell would have had to treat Mrs. Mengle, and did, for the conditions caused by the accident. If he incidentally contributed other services, defendant should not be permitted to claim any diminution or apportionment in his bill. The doctor was asked how he could separate the treatments for the epileptic condition from those given for the injuries resulting from the accident, but no answer was forthcoming because the examination took a different tack.
We find no decision or authority dealing with the question under consideration. The closest is the English case of Shearman v. Folland, 2 K.B. 43, 18 A.L.R.2d 652 (Ct. *82 App. 1950). Plaintiff in that case was injured in an automobile accident and, as a result, had to spend 55 weeks in a nursing home. In addition to general damages for pain and suffering, the lower court allowed her special damages of 12 guineas a week paid to the nursing home, but deducted therefrom the 7 guineas per week she had had to pay for living quarters at a hotel prior to the accident. The Court of Appeals rejected this deduction on the ground there was no evidence as to what part of the nursing home fee was for board and lodging, and also on the ground that the precise manner in which plaintiff had lived was a collateral matter. However, the court said that defendant should be given some deduction for the cost of food for which plaintiff otherwise would have had to pay and, absent evidence as to what part of the weekly charge at the nursing home was referable to meals, permitted a deduction of one pound a week from the total nursing home charge and taxed defendant with the balance. And see the annotation on the case in 18 A.L.R.2d 659 (1951).
We perceive no error in the trial court's allocation of two-thirds of the doctor's bill to the accident. It was an entirely fair and common-sense result thus to allocate a reasonable proportion of the bill to damages for the accident where the doctor had not broken it down for the various treatments rendered.
Counsel in his brief and at oral argument stated that there would be no objection to a correction of the judgment for the husband by a reduction of $42, the amount of the court's error. However, it is suggested that the $921.63 granted the husband as special damages should be permitted to stand intact although the amount was reached by an error in calculation, and this for the reason that although he had claimed damages for loss of his wife's services and society, this element of damage was overlooked by the trial court despite the fact that there was evidence on which to make a fair assessment in that regard. We consider the suggestion a fair and reasonable one, but nonetheless conclude that we should not supply an element of damages *83 which the court did not mention, but proceed strictly according to its own award of damages pattern.
The award to Mr. Mengle should have been $1,023.65, less $144, a third of Dr. Burnell's bill. Accordingly, the judgment should be modified to reflect an award in his favor of $879.65.
The judgment, as modified, is affirmed. The matter is remanded to the trial court for the entry of an amended judgment in the proper amount. Costs to plaintiff.