584 A.2d 800

WILLIAM F. BANDEL, PLAINTIFF–RESPONDENT, v. CHARLES FRIEDRICH, M.D., DEFENDANT–APPELLANT, AND EMERGENCY PHYSICIANS ASSOCIATES, ZURBRUGG MEMORIAL HOSPITAL, JEROME WARREN, M.D., PENNSAUKEN MEDICAL INDUSTRIAL CLINIC, GARDEN STATE COMMUNITY HOSP., (DIVISION OF WEST JERSEY HEALTH SYSTEMS), AND HOWARD L. PRESS, D.O., DEFENDANTS.

Argued October 10, 1990—Decided January 30, 1991.

*Richard A. Grossman* argued the cause for appellant (*Grossman & Kruttschnitt,* attorneys).

*George H. Hulse* argued the cause for respondent (*Hulse & Germano,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

Plaintiff, William Bandel, sued several physicians, hospitals, and a health-care institution for their negligence in diagnosing his condition, bacterial endocarditis. By the time of trial, all defendants except Dr. Charles Friedrich had settled with plaintiff or had been dismissed from the case. Finding negligence, the jury assessed Dr. Friedrich's fault at 20%, plaintiff's at 10%, and a second doctor's at 70%. It also awarded damages in the

amount of $720,000. The trial court molded the verdict, entering judgment against defendant for $144,000 (20% of $720,000) plus pre-judgment interest.

The Appellate Division affirmed the jury's determination of negligence but reversed the damages verdict, concluding that the trial court had erred in refusing to instruct the jury that the reasonable value of gratuitously provided services required for the care of plaintiff constituted an element of damages. It remanded the case for a trial on damages, holding that plaintiff is entitled "to recover the reasonable value of these necessary services provided without cost by a caring mother." *Bandel v. Friedrich*, 235 *N.J.Super.* 384, 391, 562 *A.*2d 813 (1989). We granted defendant's petition for certification on the questions of proximate cause and plaintiff's recovery for the reasonable value of gratuitously provided home-health care. 118 *N.J.* 196, 570 *A.*2d 960 (1989).

## I.

On our own motion, we consider initially the propriety of addressing the merits of the proximate-cause issue. With further consideration, we now conclude that in the context of this case the determination of that issue does not satisfy the standards of *Rule* 2:12–4. The judgments below reflect the application of established principles of proximate cause to an intensely-factual situation, in no way implicating "an unsettled question of general public importance." *In re Route 280 Contract*, 89 *N.J.* 1, 444 *A.*2d 51 (1982). We also are not persuaded that the question requires invocation of "our certification authority in 'the interest of justice,'" because the result reached below "is not palpably wrong, unfair or unjust." *Mahony v. Danis*, 95 *N.J.* 50, 52, 469 *A.*2d 31 (1983) (Handler, J., concurring). Further, because this case does not present a conflict between the Appellate Division and "any other decision of the same or a higher court," *R.* 2:12–4, it similarly does not call for an

exercise of this Court's supervisory powers. We therefore vacate certification on the issue of proximate cause.

## II.

The evidence adduced at trial indicated that in May 1983, plaintiff, complaining of fever, chills, and lower abdominal pain, was examined and treated first by defendant and then by Dr. James Warren. Both physicians successively failed to order blood and urine cultures, which, according to plaintiff's experts, would have revealed the presence of bacteria. The jury reasonably could have determined, as it apparently did, that their combined failures resulted in a delayed diagnosis of bacterial endocarditis. Although it ultimately was diagnosed, the bacterial endocarditis invaded plaintiff's brain and mitral valve and necessitated two operations. Severe post-operative complications, including a stroke, ensued.

The complications rendered plaintiff permanently disabled to the extent that he requires twenty-four-hour care. He has only limited use of his right leg and no use of his right arm. He has difficulty communicating with others and cannot understand completely what others say to him. Although he can tend to some rudimentary needs such as basic bodily functions and has limited ability to move, plaintiff cannot cook or do laundry. He also should not shower without standby supervision and may need assistance to get out of bed and select clothing. He cannot be left alone in his dwelling. During the three-plus years preceding trial, plaintiff's mother, Bessie Bandel, almost exclusively had provided that care and supervision. Mrs. Bandel received no compensation for her assistance.

The trial court determined that home health-care services gratuitously rendered did not constitute an element of compensatory damages. Accordingly, it refused to permit plaintiff to offer expert testimony on the reasonable value of his mother's care, although it did allow plaintiff to introduce proof of the reasonable value of future services to be provided, presumably

because Mrs. Bandel could not forever nurse her son. That lack of evidence of the value of home health care may have influenced the jury's assessment of damages. In his closing argument, defense counsel stressed both the lack of proof of expense of home health care and Mrs. Bandel's testimony that she would care for plaintiff "as long as I have to. I have no choice, he's my son." Defense counsel told the jury: "(T)here has not been any expense at all to date. We don't know when, if ever, there is going to be one ..."

We acknowledge ourselves as latecomers to the issue of an injured plaintiff's entitlement to recover the value of gratuitously provided health care as an element of compensatory damages. The majority of jurisdictions that have considered the issue recognize that a plaintiff may recover the value of those services. *See generally* 22 *Am.Jur.*2d *Damages* §§ 209, 570–71 (1988) (stating majority rule and listing jurisdictions following it). Some have expressed the view that a failure to account for the value of such services amounts to an undeserved windfall or benefit to the tortfeasor. Thus, *Oddo v. Cardi*, 100 *R.I.* 578, 218 *A.*2d 373 (1966), citing *Coyne v. Campbell*, 11 *N.Y.*2d 372, 183 *N.E.*2d 891, 894, 230 *N.Y.S.*2d 1, 5 (1962) (Fuld, J., dissenting), reasoned that the "fortuitous circumstance" of free assistance should not reduce recovery. Judge Fuld's dissent further noted that barring compensation for gratuitously rendered services could discriminate against the poor, who presumably would be affected more than the rich, who could afford nursing services. *Coyne, supra,* 11 *N.Y.*2d at 378 n. 2, 183 *N.E.*2d at 894 n. 2, 230 *N.Y.S.*2d at 6 n. 2. *Hudson v. Lazarus*, 217 *F.*2d 344, 346 (D.C.Cir.1954), expressed the rationale that the victim deserves to benefit more than the tortfeasor because legal compensation often fails to compensate fully for injuries suffered. Other courts have recognized that the value of such services can serve as a partial measure of the plaintiff's injury and loss. The Arizona Court of Appeals thus observed that the "plaintiff receiving these gratuitous services is actually detrimented. It is a well-known

fact that persons wear out their 'welcome' with friends and even with relatives unless favors are returned." *City of Tucson v. Holliday*, 3 *Ariz.App.* 10, 21, 411 *P.*2d 183, 194 (1966); *see Hanif v. Housing Auth.*, 200 *Cal.App.*3d 635, 246 *Cal.Rptr.* 192 (1988); *Oil Country Haulers, Inc. v. Griffin*, 668 *S.W.*2d 903 (Tex.Ct.App.1984); *Kretzer v. Moses Pontiac Sales, Inc.*, 157 *W.Va.* 600, 201 *S.E.*2d 275 (1973).

Jurisdictions holding that gratuitous services should not be reflected in a recovery of compensatory damages stress the absence of actual loss in material or monetary terms. They reason that the plaintiff has incurred "no expense, obligation, or liability in obtaining the services for which he seeks compensation." *Peterson v. Lou Bachrodt Chevrolet Co.*, 76 *Ill.*2d 353, 362, 29 *Ill.Dec.* 444, 448, 392 *N.E.*2d 1, 5 (1979); *see also Coyne, supra*, 11 *N.Y.*2d 372, 183 *N.E.*2d 891, 230 *N.Y.S.*2d 1 (same); *Evans v. Pennsylvania R.R. Co.*, 255 *F.*2d 205 (3d Cir.1958) (same applying Delaware law). *See generally Damages, supra*, 22 *Am.Jur.*2d § 572 (stating minority rule and listing jurisdictions following it).

The majority position permitting recovery of gratuitously provided health-care services as an element of a personal injury award comports with the views reflected generally in our decisions concerning compensatory damages. Defendant does not and cannot dispute that a plaintiff's incapacity to care for himself or herself constitutes an aspect of personal injury and a proper element of damages. Our courts repeatedly have held that the inability to participate in physical activity constitutes one aspect of compensable harm. Compensation referable to that kind of harm may be awarded for "disability to or impairment of plaintiff's faculties, health or ability to participate in activities." *Reale v. Township of Wayne*, 132 *N.J.Super.* 100, 114, 332 *A.*2d 236 (Law Div.1975) (citing *Simmel v. New Jersey Coop. Co.*, 28 *N.J.* 1, 16, 143 *A.*2d 521 (1958)); *Mengle v. Shields*, 53 *N.J.Super.* 76, 80, 146 *A.*2d 524 (App.Div.1958); *see also Lanzet v. Greenberg*, 222 *N.J.Super.* 540, 543, 537 *A.*2d 742 (App.Div.1988) (same). The "ability to participate in activi-

ties," by definition, must include the most basic capacity to perform the mundane tasks necessary and incidental to daily existence.

Accordingly, we determine that the lost ability to care for oneself due to tortiously inflicted injury is an appropriate element of compensatory damages recoverable by an injured plaintiff from the responsible tortfeasor. The measure of that aspect of personal injury damages is the reasonable cost of having a third party perform those activities. That determination reflects the principle that "the primary purpose of the tort law is 'that wronged persons should be compensated for their injuries and that those responsible for the wrong should bear the cost of their tortious conduct.'" *Weinberg v. Dinger,* 106 *N.J.* 469, 486–87, 524 *A.*2d 366 (1987) (quoting *People Express Airlines, Inc. v. Consolidated Rail Corp.,* 100 *N.J.* 246, 255, 495 *A.*2d 107 (1985)).

Defendant stresses that Mrs. Bandel was under no obligation to care for her son and, further, that she did not require any payments from her son for the services rendered. Based on these factors, defendant asserts that the collateral source rule bars recovery of the value of these services as an element of damages. The collateral source rule, according to defendant, precludes such a recovery in situations where a third party has no duty to pay plaintiff for such care or where a third party directly provides services as opposed to paying for their cost. We disagree. In our view, the collateral source rule does not, in these circumstances, operate as a bar to a recovery that includes the value of such services.

"[O]rdinarily a tortfeasor may not set up in mitigation of damages payments made to injured persons from collateral sources." *Long v. Landy,* 35 *N.J.* 44, 55, 171 *A.*2d 1 (1961). The traditional collateral source rule provides that a plaintiff's recovery of damages should include the costs of injury-necessitated services even when he or she does not pay for them. Our courts have applied that rule in various contexts. *E.g., Dubil v.*

*LaBate,* 52 *N.J.* 255, 245 *A.*2d 177 (1968) (damages in wrongful death action not affected by remarriage of surviving spouse); *Long, supra,* 35 *N.J.* at 55–56, 171 *A.*2d at 7 (wife's recovery in her suit against deceased husband's estate not reduced by inheritance or available insurance). We have explained that "[a]n injured person is entitled to be made whole. It should not concern the tortfeasor that someone else is obligated to aid his victim because of a duty assumed by contract or imposed by law." *Patusco v. Prince Macaroni, Inc.,* 50 *N.J.* 365, 368, 235 *A.*2d 465 (1967).

█  The collateral source rule historically has recognized that the tortfeasor cannot escape his or her duty to make the victim whole because of the fortuitous independent provision of aid by a third person to the victim. *E.g., Cowan v. Kaminow,* 128 *N.J.L.* 398, 406, 26 *A.*2d 258 (E. & A.1942) (payment of various expenses for care of plaintiff's decedent by decedent's children "should not become a gratuity to a *tort feasor* whose negligence caused the injury and the financial loss"). The rule does not differentiate between situations in which the provider has a duty to pay for the victim's care and those in which a friend or relative gratuitously funds such services. The amount paid to plaintiff from various sources "regardless of whether paid pursuant to *contract* or as a *gratuity,* cannot operate to reduce the damages recoverable against a tort feasor." *Rusk v. Jeffries,* 110 *N.J.L.* 307, 311, 164 *A.* 313 (E. & A.1932).

We similarly find no distinction that can be extrapolated from the common-law collateral source rule between the gratuitous payment for a third party's services and free provision of such home health-care services. In both situations, the payor/provider ensures that the tort victim receives the necessary assistance to overcome his or her incapacity and indirectly compensates for a part of the victim's loss attributable to the injuries. *Tyminski v. United States,* 481 *F.*2d 257 (3d Cir. 1973), applying New Jersey law, anticipated that interpretation

and held that the collateral source rule forbids exclusion of gratuitous care as an element of damages. Recognizing this State's "expansive application" of the collateral source rule, the court observed, "[w]e discern no distinction in these cases between recovery for the value of medical services gratuitously paid for by a relative as opposed to medical services gratuitously rendered by a relative." *Id.* at 268, 270; *see also Sporn v. Celebrity, Inc.,* 129 *N.J.Super.* 449, 453, 324 *A.*2d 71 (Law Div.1974) (indicating, in dictum, that the provision of gratuitous medical care does not reduce the gross amount of damages received).

We acknowledge that the subject of tort damages, including the common-law collateral source rule, is an appropriate subject for legislative attention, which it has now received. *N.J.S.A.* 2A:15–97, which is effective only for causes of action arising on or after December 18, 1987, restricts the common-law collateral source rule. This case, however, presents no occasion for us to consider that statute.

In concluding that the common-law collateral source rule does not bar the inclusion of health-care services as an element of damages, we also point out that the valuation of such services is a familiar process and poses no obstacle to recovery. Thus, in the somewhat analogous area involving the recovery of the pecuniary value of a child's companionship under the Wrongful Death Act, *N.J.S.A.* 2A:31–5, the Court dealt with the valuation of such services. *See Green v. Bittner,* 85 *N.J.* 1, 424 *A.*2d 210 (1980). The Court there observed that services involving cooking, cleaning, administering to basic needs, administering medication, and other basis chores of nursing were "substantially equivalent to services provided by nurses or practical nurses," and should be valued by "what the marketplace would pay a stranger with similar qualifications for performing such services." *Id.* at 12 & n. 2, 424 *A.*2d 210.

In this case, Bessie Bandel's care for her son does not alter, indeed, it confirms, the fact that plaintiff has lost the capacity

to care for himself. The gratuitous provision of such services neither abates nor diminishes defendant's obligation to pay full compensatory damages that include the value of such services as a measure of plaintiff's lost capacity. Accordingly, we hold that the value of gratuitously furnished health-care services is an appropriate element of damages to be considered in determining the extent of an injured plaintiff's lost capacity and in assessing the totality of the injuries.

We affirm the Appellate Division judgment remanding the case for a new trial on the issue of damages.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.