714 A.2d 970

GALE ANN LYNCH AND ROBERT LOUIS LYNCH, HER HUS-
BAND, AND JOSEPH LYNCH, AN INFANT, BY HIS GUARD-
IANS AD LITEM, GALE LYNCH AND ROBERT LOUIS LYNCH,
INDIVIDUALLY AND PER QUOD, PLAINTIFFS–APPEL-
LANTS, v. LAURENCE M. SCHEININGER, M.D., LAURENCE
A. SEITZMAN, M.D., DRS. FINKEL, DRUCKER, SEITZMAN,
P.A., AND DRUCKER, SEITZMAN & SCHEININGER, P.A., DE-
FENDANTS–RESPONDENTS, AND JERROLD S. FINKEL,
M.D., THE ESTATE OF JERROLD S. FINKEL, M.D., PAUL
DRUCKER, M.D., JOHN F. KENNEDY MEDICAL CENTER
AND STEPHEN A. GROCHMAL, M.D., DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued February 9, 1998—Decided August 7, 1998.

320

Before Judges PETRELLA, SKILLMAN and STEINBERG.

*Richard C. Swarbrick,* argued the cause for appellants.

*Beth A. Hardy,* argued the cause for respondent Laurence M. Scheininger, M.D. (*Francis & Berry,* attorneys; *Hugh P. Francis,* of counsel; *Mr. Francis* and *Ms. Hardy,* on the brief).

*Richard J. Bolger,* argued the cause for respondents Laurence A. Seitzman, M.D., Drs. Finkel, Drucker, Seitzman, P.A. and Drucker, Seitzman & Scheininger, P.A. (*Orlovsky, Grasso & Bolger,* attorneys; *Mr. Bolger,* of counsel and on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The issue presented by this appeal is whether a child with birth defects caused by malpractice in connection with the mother's prior pregnancy is barred from maintaining a malpractice action against the doctor because his parents' voluntary decision to conceive another child despite their awareness of the increased risks of any future pregnancy constitutes a supervening cause of the birth defects. We conclude that a trier of fact could find that the conception of additional children by the infant plaintiff's parents was reasonably foreseeable and consequently this action is not barred.

Defendants Laurence M. Scheininger and Laurence A. Seitzman are obstetricians who treated plaintiff Gale Ann Lynch during a 1984 pregnancy which ended in a stillbirth. This stillbirth result-

ed from erythroblastosis fetalis, a condition caused by the incompatibility of maternal and fetal blood Rh factors. When the Rh negative blood of a mother is exposed to the Rh positive blood of her fetus, the mother's immune system recognizes the fetal blood as foreign material and produces antibodies to attack the fetal blood cells. This process is called Rh isoimmunization. Erythroblastosis fetalis occurs when the mother's blood mixes with the fetus' blood and the fetus attempts to compensate for the destruction of red blood cells caused by the mother's antibodies by overproducing blood cells. If the fetus is not delivered prematurely, this condition causes organ failure and may result in death.

In 1986, Mrs. Lynch and her husband, plaintiff Robert Lynch, brought a malpractice action against Dr. Scheininger and others seeking damages for the stillbirth and injury to Mrs. Lynch's childbearing capacity. That action was eventually settled.[1]

During the pendency of the prior action, Mrs. Lynch gave birth to plaintiff Joseph Lynch on January 11, 1987. Joseph was born with extremely serious neurological impairments, which were caused by the same erythroblastosis condition which caused the 1984 stillbirth.

On January 3, 1990, plaintiffs moved to amend their complaint relating to the 1984 stillbirth to add claims arising out of Joseph's birth. The trial court denied this motion, and on January 23, 1990, plaintiffs filed the present action, naming as defendants Drs. Scheininger and Seitzman, their professional associations, their associates Drs. Jerrold S. Finkel and Paul Drucker, Dr. Finkel's estate, and the John F. Kennedy Medical Center.[2] Plaintiffs alleged that defendants did not diagnose and consequently did not treat Mrs. Lynch's Rh isoimmunization, which was a deviation

---

[1] The claims asserted in the present action were expressly excepted from the release executed in connection with this settlement.

[2] The parties other than Drs. Scheininger and Seitzman either were never served with the complaint or were dismissed prior to submission of the case to the jury. Plaintiffs do not raise any issue with respect to any party other than Drs. Scheininger and Seitzman.

from accepted standards of practice that not only caused the 1984 stillbirth but also contributed to Joseph's disabilities. Plaintiffs alleged that the failure to perform a fetal blood transfusion or to deliver the fetus at an earlier point in the course of Mrs. Lynch's 1984 pregnancy increased Mrs. Lynch's isoimmunization and consequently increased the risk of a bad outcome in future pregnancies. Mr. and Mrs. Lynch asserted a claim of "wrongful birth" on their own behalf and a claim of "wrongful life" on Joseph's behalf based on defendants' alleged failure to properly advise them of the risks of a future pregnancy. In addition, plaintiffs claimed that defendants' failure to properly manage Mrs. Lynch's 1984 pregnancy was a substantial contributing cause of Joseph's severe disability and the resultant medical and other expenses.

After Scheininger filed a third-party complaint against Dr. Stephen A. Grochmal, the treating doctor during the mother's pregnancy with Joseph, plaintiffs also joined Grochmal as a defendant. Prior to trial, plaintiffs settled their claim against Dr. Grochmal for $880,000.

During the trial, the court conducted a *Lopez* hearing,[3] as a result of which it dismissed Mr. and Mrs. Lynch's claims on the ground that they were barred by the statute of limitations. The court found that the Lynches knew or should have known that they may have had a basis for a claim against defendants at the time of Joseph's birth and consequently there was no basis for invocation of the discovery rule.

At the close of plaintiffs' case, the court also dismissed Joseph's claim for wrongful life on the ground that the evidence could not support a finding that Mr. and Mrs. Lynch relied upon defendants' advice in deciding to conceive another child.[4]

At the conclusion of a twenty-three day trial, the court reserved decision on defendants' motion to dismiss Joseph's remaining

---

[3] *Lopez v. Swyer*, 62 *N.J.* 267, 300 A.2d 563 (1973).

[4] This ruling is not challenged in this appeal.

claims and submitted the case to the jury. The jury subsequently indicated that it was unable to reach a verdict, whereupon the court declared a mistrial and indicated that it would decide defendants' reserved motions to dismiss Joseph's remaining claims within a few days.

In a written opinion on the reserved motions, the court concluded that the recognition in the field of medical malpractice of "a preconception tort," which it characterized as a claim that a defendant's malpractice "cause[d] some injury to the mother's reproductive ability before the child [was] conceived and, as a result, a child in a subsequent pregnancy [was] harmed," would be consistent with New Jersey law and consequently it would "presume such a cause of action exists."[5] However, the court concluded that Mr. and Mrs. Lynch's intentional conception of a child when they were aware Mrs. Lynch's Rh negative sensitization presented a serious risk to any future baby she might deliver constituted a supervening cause of Joseph's disabilities which precluded the imposition of liability upon defendants. The court stated that "[t]o hold the defendants liable . . ., where the parents intentionally assumed the risk, would be . . . contrary to [the] principle . . . that in the face of a defendant's negligence a person should not be able to increase the consequences of that negligence by an intentional act." In addition, the court concluded that Joseph's claim against Dr. Seitzman should be dismissed because the record did not contain any evidence from which a reasonable trier of fact could find that he had committed malpractice.

Plaintiffs appeal from the dismissal of their claims. We reverse the part of the judgment dismissing Joseph's claims for his

[5] In *Taylor v. Cutler*, 306 *N.J.Super.* 37, 703 *A.2d* 294 (App.Div.1997), a panel of this court held that a child with birth defects caused by damage to his mother's reproductive system as a result of an automobile accident could not maintain a preconception tort claim. However, the court implied in dictum that it would recognize the maintainability of a preconception tort claim against doctors whose malpractice in connection with a mother's prior pregnancy was a proximate cause of a child's birth defects. *Id.* at 50–52, 703 *A.2d* 294. *Taylor* is currently pending before the Supreme Court. 153 *N.J.* 52, 707 *A.2d* 155 (1998).

disabilities and consequent medical and other expenses against Dr. Scheininger. We affirm the judgment in all other respects.

Before discussing the only substantial issue raised in this appeal, we briefly address plaintiffs' other arguments.

Although none of plaintiffs' point headings relate to the dismissal of Mr. and Mrs. Lynch's claims on the ground that they were not filed within the two year limitation period, some of the discussion under Point III of their brief appears to be directed at this ruling. Consequently, we assume the appeal challenges the dismissal of Mr. and Mrs. Lynch's claims. We affirm this ruling substantially for the reasons expressed in the trial court's oral opinion of July 5, 1995.

■ Plaintiffs argue that after granting a mistrial the trial court lacked jurisdiction to consider defendants' reserved motion to dismiss. However, *Rule* 4:40–2(a) provides in pertinent part:

Reservation of Decision. *The court may* reserve decision on a motion for judgment made at the close of all the evidence, submit the case to the jury and then *decide the motion* either before or within 10 days after the verdict, or *if no verdict is returned, within 10 days after the jury's discharge.* (Emphasis added).

Thus, the applicable court rule expressly permits the trial court to reserve on a motion for judgment and decide the motion later even if no verdict is returned.

■ Plaintiffs also argue that the motion for judgment was improperly granted because it was not renewed by defendants after the trial. However, a party is required to renew a motion for judgment only if it has been denied at trial. *R.* 4:40–2(b). If the court has reserved decision, the moving party is entitled to a ruling without renewing the motion. *R.* 4:40–2(a); *see Wenner v. McEldowney & Co.* 102 *N.J.Super.* 13, 18–19, 245 *A.*2d 208 (App.Div.), *certif. denied,* 52 *N.J.* 493, 246 *A.*2d 452 (1968).

Plaintiffs' brief does not contain any point heading which challenges the trial court's conclusion that the record does not contain any evidence from which a reasonable trier of fact could find that Dr. Seitzman committed malpractice. However, plaintiffs make several cryptic references to this conclusion under Points III and

VI of their brief. Consequently, in the interests of completeness, we have reviewed the record relating to this point and agree substantially for the reasons set forth in the trial court's written decision that the record does not support a finding of malpractice on the part of Dr. Seitzman.

We turn now to the only substantial issue raised in this appeal: whether Joseph is barred from any recovery for Dr. Scheininger's malpractice because his parents' voluntary and intentional act of conceiving him despite their awareness of Mrs. Lynch's Rh sensitized condition constituted a supervening cause of his disabilities.[6]

"[A] tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his

---

[6] Plaintiffs argue that the trial court erred in finding that Mr. and Mrs. Lynch were aware when they conceived Joseph that Mrs. Lynch's Rh sensitive condition created a risk of any future pregnancy resulting in a fetus developing erythroblastosis. The court concluded that its earlier findings in the *Lopez* hearing were controlling with respect to defendants' motion to dismiss Joseph's claims under the doctrines of collateral estoppel and law of the case. This ruling was erroneous. For the doctrine of collateral estoppel to apply, the issue must be identical to the one previously presented, the prior action must have been a judgment on the merits, and the party against whom the doctrine is asserted must be the same, or in privity with, a prior party. *Allesandra v. Gross*, 187 N.J.Super. 96, 105, 453 A.2d 904 (App.Div.1982). Moreover, collateral estoppel applies only to facts that were directly in issue and necessary to support the prior judgment. *Ibid.* The factual issue on defendants' motion to dismiss Joseph's claims was not identical to the issue decided in the *Lopez* hearing nor was it necessary to support the determination at that hearing. In the *Lopez* hearing, the court concluded that when Joseph was born, the parents "had in their possession overwhelming facts that would suggest to a reasonable person of ordinary diligence that the conduct of the Defendant Doctors may have been negligent and may have been a cause of Joseph's condition." In contrast, when entering judgment against Joseph, the court found that "Mr. and Mrs. Lynch intentionally and voluntarily went forward and conceived a child knowing the serious risks which Mrs. Lynch's blood condition presented to a baby." The finding that the parents had actual knowledge of serious risk before conception is not identical to the findings that they reasonably should have known of defendants' negligence after the birth. Moreover, even though the court observed in its opinion at the *Lopez* hearing that the "evidence was overwhelming" that the plaintiffs were aware of the risks presented by Mrs. Lynch's Rh negative

negligence and it is generally sufficient if his negligent conduct was a substantial factor in bringing about the injuries." *Rappaport v. Nichols*, 31 *N.J.* 188, 203, 156 *A.*2d 1 (1959). "The fact that there were also intervening causes which were foreseeable or were normal incidents of the risk created would not relieve the tortfeasor of liability." *Ibid.; accord Cowan v. Doering*, 111 *N.J.* 451, 465–66, 545 *A.*2d 159 (1988). Although "the limit of proximate cause is, ultimately, an issue of law [that] entails a consideration of public policy and fairness," *Williamson v. Waldman*, 150 *N.J.* 232, 245, 696 *A.*2d 14 (1997), questions of proximate or intervening cause are ordinarily factual determinations for the jury. *J.S. v. R.T.H.*, 155 *N.J.* 330, 351, 714 *A.*2d 924 (1998); *Yun v. Ford Motor Co.*, 276 *N.J.Super.* 142, 160, 647 *A.*2d 841 (App.Div.1994) (Baime, J., dissenting), *rev'd on dissent*, 143 *N.J.* 162, 669 *A.*2d 1378 (1996).

"A tortfeasor is answerable for the consequences of wrongful conduct despite the occurrence of an intervening cause of

---

condition prior to [Joseph's] conception, this finding was not subject to collateral estoppel on the motion to dismiss Joseph's claims because it was not necessary to support the court's determination to dismiss the parents' suit. For similar reasons, the court's reliance on the law of the case doctrine was also erroneous. This doctrine only applies to a specific issue which has been contested and decided at an earlier stage in litigation. *See State v. Reldan*, 100 *N.J.* 187, 203–04, 495 *A.*2d 76 (1985). In this case, the factual and legal issues decided at the *Lopez* hearing were different from the issue presented by defendants' motion to dismiss plaintiffs' claim. Because the trial court erroneously relied upon the doctrines of collateral estoppel and law of the case in finding that Mrs. Lynch's Rh sensitive condition created a risk of any future pregnancy resulting in a fetus developing erythroblastosis, it did not consider whether, on defendants' motion for a directed verdict under *Rule* 4:40–1, the evidence on this issue was "so one-sided that [defendants] must prevail as a matter of law." *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 533, 666 *A.*2d 146 (1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242, 251–52, 106 *S.Ct.* 2505, 2512, 91 *L. Ed.*2d 202, 214 (1986). Although we do not decide the issue, we assume for the purpose of this opinion Mr. and Mrs. Lynch were aware of Mrs. Lynch's Rh sensitive condition and that it created a greater than normal risk in connection with any future pregnancy. However, we conclude that these facts would not bar Joseph's claims against Dr. Scheininger.

the harm so long as the intervening cause was foreseeable." *Bandel v. Friedrich,* 235 *N.J.Super.* 384, 390, 562 *A.*2d 813 (App. Div.1989), *aff'd,* 122 *N.J.* 235, 584 *A.*2d 800 (1991) (certification vacated on proximate cause issue, 122 *N.J.* at 237–38, 584 *A.*2d 800). And an intervening cause may be foreseeable even though it involves an intentional act of a third party. *See Parks v. Pep Boys,* 282 *N.J.Super.* 1, 11–12, 659 *A.*2d 471 (App.Div.1995). Thus, in *Parks,* the court rejected an argument that a store could not be held liable for the death of a person who inhaled freon which the store sold to an underage person because the decedent's intentional inhalation of the freon constituted an intervening cause of his death. *See also Hake v. Manchester Township,* 98 *N.J.* 302, 318, 486 *A.*2d 836 (1985) (a wrongful death action for negligent supervision of a prisoner who committed suicide in which the Court approved a jury instruction that "[t]he defendants are not relieved from liability if you find the intervening voluntary act of the decedent taking his own life was reasonably foreseeable by the defendants"); *cf. J.S. v. R.T.H., supra,* 155 *N.J.* at 337–351, 714 *A.*2d 924 (duty may be imposed to exercise due care to reduce the risk of a third person committing a criminal act); *Clohesy v. Food Circus Supermarkets, Inc.,* 149 *N.J.* 496, 694 *A.*2d 1017 (1997)(same).

In this case, a jury could find that it was reasonably foreseeable the Lynches would conceive additional children after the 1984 stillbirth caused by Dr. Scheininger's negligence. The desire to bear children is one of the most basic human instincts. Consequently, many couples choose to conceive a child even though they are aware that the age or physical condition of the mother or the history of her past pregnancies may create a greater than normal risk of the birth of a child with abnormalities. For this reason, we perceive no basis for concluding as a matter of law that it is not reasonably foreseeable that a married couple would attempt to conceive additional children simply because a doctor's malpractice in connection with a prior pregnancy has increased the risk that a child born of a subsequent pregnancy will

suffer abnormalities. We also do not perceive any public policy that would be served by depriving a child born with defects proximately caused by the malpractice of a doctor during the mother's prior pregnancy of the opportunity to seek damages from the doctor. It is settled law that a doctor's duty to a pregnant woman extends to a child born of that pregnancy. *Procanik v. Cillo*, 97 *N.J.* 339, 348–55, 478 *A.2d* 755 (1984). We believe that this duty should reasonably extend to the avoidance of foreseeable harm to a child born of a future pregnancy. Therefore, we conclude that Mr. and Mrs. Lynch's voluntary decision to conceive another child did not constitute a supervening cause of Joseph's disabilities which precludes him from pursuing a malpractice claim against Dr. Scheininger.

This conclusion is directly supported by the Supreme Court of Indiana's decision in *Walker v. Rinck*, 604 *N.E.*2d 591 (Ind.1992), which also involved a malpractice claim brought by children with alleged birth defects caused by the defendant doctor's failure to properly manage their mother's prior pregnancy which resulted in her developing Rh isoimmunization. In reversing a summary judgment in the doctor's favor on the ground that the parents' decision to conceive additional children constituted an intervening, superseding cause of the children's health problems, the court stated:

> Whether Mr. and Mrs. Walker should have conceived additional children after having knowledge of the risks of doing so or whether they should have aborted these three children may be a matter of great public and private debate. However, as a court of law, we need not decide this question because we hold that their conduct in conceiving these children was not an intervening, superseding cause. A superseding, intervening cause sufficient to break the causal chain between wrongful conduct and injury must be one that is not "foreseeable" at the time of the wrongful conduct. Here, the very purpose of giving RhoGAM was to prevent the totally foreseeable consequences of a mother who has developed antibodies from becoming pregnant and delivering a viable child.... Because [Mrs. Walker delivering additional children] was foreseeable at the time of the alleged negligent acts, it cannot be an intervening, superseding cause of the Walker children's alleged injuries.

[*Id.* at 596.]

*See also Lough v. Rolla Women's Clinic, Inc.,* 866 *S.W.*2d 851 (Mo.1993).

*Graham v. Keuchel,* 847 *P.*2d 342 (Okl.1993), upon which the trial court relied in dismissing Joseph's claims, does not support the conclusion that the decision of an Rh sensitive mother to bear additional children constitutes a supervening cause which precludes the imposition of liability upon a doctor who committed malpractice in the management of her prior pregnancy. Instead, the court in *Graham* reversed a jury verdict in favor of the defendant doctor in part because the court's instructions regarding supervening causation were unduly favorable to the doctor. The court indicated that proper instructions would require the court to inform the jury that to rule in the doctors' favor on the issue of supervening causation, it would have to find, among other things, that the mother's decision to conceive another child was "unforeseeable to the physicians." *Id.* at 354 n. 55. Therefore, even though some of the court's discussion in *Graham* appears inconsistent with our conclusion that Joseph is not barred from maintaining this action, the result—a remand for the jury to decide the issue of supervening causation guided by proper instructions—is consistent with the result we reach here.

Finally, we note that there was no evidence adduced at trial concerning the mathematical probability of the Lynches conceiving a fetus with severe abnormalities or the probability that any such abnormality could be prevented or minimized through proper management of the pregnancy. In fact, the only evidence bearing on the question was the testimony of defendants' own expert, Dr. Anthony Quartell, who expressed the opinion that but for the malpractice of the obstetrician, Dr. Grochmal, in the management of Joseph's pregnancy, "in all likelihood this baby would be healthy today." Moreover, there was sharply conflicting evidence regarding what the Lynches were told prior to Joseph's conception about the risks of any future pregnancy. Therefore, we have no occasion to decide whether a defendant in a medical malpractice case would be entitled to judgment as a matter of law on the

issue of supervening cause if undisputed evidence showed that the parents were aware there was a high likelihood any future pregnancy would result in the birth of a child with serious abnormalities.

Accordingly, we reverse the part of the judgment dismissing Joseph's claims against Dr. Scheininger for his disabilities and consequent medical and other expenses. We affirm the judgment in all other respects.