Karen **PROVENZANO** and Thomas Provenzano, individually, Plaintiffs,

v.

**INTEGRATED GENETICS,** et al., Defendants.

No. Civ.A. 97–1460(MLC).

United States District Court, D. New Jersey.

June 30, 1999.

Bard L. Shober, Goldsmith, Weiss, & D'arcy, P.C., New Road Northfield, New Jersey.

Christopher J. Carey, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP Newark, New Jersey.

## MEMORANDUM OPINION

HUGHES, United States Magistrate Judge.

Presently before the Court is the Defendants' motion, in a *wrongful birth* case, to dismiss Plaintiffs' claim for damages related to extraordinary medical expenses. The Plaintiffs oppose the motion. The Court considered all written submissions and conducted oral argument by recorded conference call on June 28, 1999. Pursuant to 28 U.S.C. § 636, the parties have consented to the jurisdiction of the United States Magistrate Judge for all purposes.

This opinion completes the discussion on the dispositive motion practice begun with the Court's decision, reported in *Provenzano v. Integrated Genetics*, 22 F.Supp.2d 406 (D.N.J.1998), denying Defendants' motion for summary judgment on the cause of action itself. Defendants had sought summary judgment because the Plaintiff, Mrs. Provenzano, could not testify that she would have had an abortion if the alleged negligence had not occurred.

For the following reasons, and chiefly based upon the New Jersey Supreme Court's recent decision in *Canesi v. Wilson*, 158 N.J. 490, 730 A.2d 805 (1999), the Court will grant the Defendants' motion and dismiss all claims for reimbursement of medical damages because Mrs. Proven-

zano's inability to say that she would have terminated the pregnancy precludes a jury from finding that the alleged negligence proximately caused the extraordinary medical expenses incurred as a result of Tiffani's [1] birth and, regrettably, very brief life.

## I. *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

The facts and procedural history are more fully stated in the Court's previous opinion but the essentials are these.

Mrs. Provenzano was treated during the course of her pregnancy in 1995 by Dr. Ravitz and Dr. Hux. Mrs. Provenzano was carrying twins. During the course of this treatment, Dr. Hux conducted an amniocentesis and sent amniotic samples to the Defendant, Integrated Genetics, for testing. The test results were returned as negative for birth defects for both fetuses. After giving birth to twins, and after Tiffani had been taken to Children's Hospital in Philadelphia to be treated for serious birth defects, the tests were reexamined. The reexamination revealed that a Trisomy 14 mosaicism, a genetic disease, was overlooked when the slides were originally examined. Tiffani passed on approximately eight months after birth.

During her discovery deposition in this case, Mrs. Provenzano testified, in relevant part, as follows:

Q: As you sit here now, do you know whether you could have terminated one pregnancy?

A: No.

Q: As you sit here now, do you know whether you would have terminated one pregnancy?

A: No.

---

Q: What choice are you referring to?

---

**1.** The child's name was incorrectly reported as *Tiffany* in the Court's Memorandum Opin-

ion and the Plaintiff's original Complaint.

A: To abort the one that was ill and keep the other one.

Q: And are you saying that's what you would have done?

A: I'm not sure.

Mr. Provenzano, the Plaintiff husband and father, testified in his discovery deposition, again in relevant part, as follows:

Q: [W]ould you have agreed to terminate one of the fetuses?

A: No, I wouldn't have agreed to terminate one of the fetuses. There's no need to. I mean, I wanted both of them.

Subsequent to his deposition, Mr. Provenzano submitted a certification in which he alleged that, had he known of the birth defect, he would have favored a termination and would have strongly advised his wife to terminate the *one* pregnancy. He further stated that his deposition testimony was "inaccurate" because he had not slept in approximately 21 hours.

Plaintiffs originally filed their complaint in state court on November 1, 1996, later amended their complaint, and, on March 20, 1997, the matter was removed to federal court based upon diversity of citizenship grounds. Thereafter, after full discovery had been completed and the parties consented to the jurisdiction of the United States Magistrate Judge, the Defendants filed a motion for summary judgment, essentially arguing that the Plaintiff's inability to say that she would have terminated the one twin's pregnancy was conclusive as to the cause of action itself because it would preclude a finding that the alleged negligence caused *any* injury. That particular motion was denied on October 13, 1998 and the Defendants sought, without opposition from the Plaintiffs, to amend the order to allow them to seek an interlocutory appeal of the decision denying the motion for summary judgment. The United States Court of Appeals for the Third Circuit denied the petition for leave to appeal on March 4, 1999 and remanded the matter. The present motion was filed May 28, 1999 and oral argument was conducted on June 28, 1999.

## II. DISCUSSION

Summary judgment may only be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed. R.Civ.P. 56; Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In a summary judgment motion, the non-moving party receives the benefit of all reasonable doubts and any inferences drawn from the underlying facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the non-moving party bears the burden of proof at trial as to a dispositive issue, Rule 56(e) requires her to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990). Issues of material fact are genuine only "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In its original opinion, this Court premised its decision on an analysis that since New Jersey case law did not specifically address proximate causation in a wrongful birth context where the mother cannot say she would have terminated the pregnancy, it was necessary to predict how the New Jersey Supreme Court would decide the issue. *Provenzano,* 22 F.Supp.2d at 416 (citing *Polselli v. Nationwide Mutual Fire Ins. Co.,* 126 F.3d 524, 528 (3d Cir.1997)).

Additionally, this Court, in denying the Defendants' motion for summary judgment, forewarned the parties of a *caveat* on the issue of proper damages, by stating:

Further, it is for a jury to determine damages. It may well be that Mrs. Provozano's inability to testify that she would have had an abortion would oper-

ate as a limitation on damages (i.e., compensation for her emotional distress and suffering but not medical expenses for the child). However, the parties have not had a fair opportunity to present this issue to the Court. Resolution of the damages issue, though, is not necessary to decide this summary judgment motion. It is, uniquely for a jury, and not a court, to decide these issues.

22 F.Supp.2d at 418.

In this wrongful birth action, the Plaintiffs have asserted claims for damages related to the parents' emotional distress and suffering and for extraordinary medical expenses associated with the baby's medical treatment over an eight month period.

The Defendants, acknowledging the Court's earlier decision, do not dispute the Plaintiffs' entitlement to damages related to the parents' emotional distress, if successful on the issue of liability. However, Defendants claim that the mother's inability to testify that she would have had an abortion would prevent any rational jury from finding that the alleged negligence proximately caused damages related to medical treatment of Tiffani over the course of her very brief life.

In essence, the Defendants argue that Plaintiffs, in view of the mother's sworn testimony, cannot prove that Tiffani would not have been born except for the allegedly negligent conduct. Defendants rely on the New Jersey Supreme Court's holding that: "[a]n act or an omission is not regarded as a cause of an event if the particular event would have occurred without it." *Kulas v. Public Service Electric and Gas Co.*, 41 N.J. 311, 317, 196 A.2d 769 (1964). Defendants claim that any alleged negligence could not have proximately caused the incurring of any medical expenses because the Plaintiff cannot say she would have terminated the pregnancy.

Additionally, the Defendants distinguish *wrongful life* cases from *wrongful birth* cases in support of their argument that only emotional distress damages and not medical expense damages should go to the jury at trial. Significantly here, the complaint only alleges a claim for wrongful birth.

The New Jersey Supreme Court has recognized two separate causes of actions, "wrongful life" and "wrongful birth", that may arise when parents are deprived of the option of abortion as a result of negligent medical treatment. *Procanik by Procanik v. Cillo*, 97 N.J. 339, 348, 478 A.2d 755 (1984). In *Procanik*, the Court barred the wrongful birth claim on statute of limitations grounds but permitted a wrongful life claim where extraordinary medical damages may be awarded. 97 N.J. at 352, 478 A.2d 755. However, the court also found that the infant plaintiff could not recover for emotional distress or impairment of childhood. *Id.* at 342–43, 478 A.2d 755.

In *Berman v. Allan*, 80 N.J. 421, 404 A.2d 8 (1979), the New Jersey Supreme Court first established a wrongful birth claim, permitting an award of damages for emotional distress and anguish caused by the defendants' negligence. In *Schroeder v. Perkel*, 87 N.J. 53, 432 A.2d 834 (1981), the New Jersey Supreme Court liberalized the recovery available in a wrongful birth case by permitting recovery of extraordinary medical damages. Notably, in *Schroeder*, there is no indication that the mother could not assert that, had she been accurately informed of the potential for defect, she would have chosen termination of the pregnancy.

Plaintiffs, on the other hand, liken Mrs. Provenzano's failure to testify that she would have aborted to an intervening cause which would not break the chain of proximate cause "so long as the intervening cause was foreseeable". *Lynch v. Scheininger*, 314 N.J.Super. 318, 327–328, 714 A.2d 970 (App.Div.1998). Defendants respond by pointing out that, in *Lynch*, it was the conception of the child that was foreseeable, i.e., that even knowing the risk, a parent may go ahead and seek to

conceive a child. Defendants say that to equate Mrs. Provenzano's inability to testify that she would have aborted with a decision to try to conceive a child is nothing more than the proverbial *red herring*.

Plaintiffs also argue that the stringent standard for a grant of summary judgment, i.e., that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law, has not been met by the Defendants. Finally, Plaintiffs claim that the Court's earlier opinion precluded this very motion, while Defendants claim that the opinion clearly invited the motion.

■ Perhaps providentially (since New Jersey does not currently employ a Certification process for federal courts deciding issues of state law), the Court is informed by a recent New Jersey Supreme Court decision which addresses the issue of damages in wrongful birth cases. *Canesi v. Wilson, supra*. Though *Canesi* does not turn on the precise issue involved here, the Court finds that it is conclusive on the matter of damages and since, in a diversity case, state law is controlling on a federal court, the Court must dismiss the claims related to extraordinary medical damages.

*Canesi* involved the issue of "whether it is necessary to establish medical causation in a wrongful birth action that involves the prescription of drugs without adequate warning of the fetal risks posed by those drugs." 730 A.2d at 809. Plaintiff sued her medical doctors for failure to warn that the use of the drug Provera (a progestational agent designed to induce menstruation) might cause congenital impairment such as limb reduction. The Physician's Desk Reference (PDR), at the time of prescribing the drug, warned that if a woman became pregnant while taking Provera, she should be advised of a "risk of . . . limb reduction. . . ." *Id.*

The Defendants moved for summary judgment on the grounds that Plaintiff offered no expert who could testify that Provera caused the limb reduction and,

furthermore, that the PDR no longer contained the previous warning. The trial court granted the motion and the Appellate Division affirmed, finding that Plaintiff was unable to prove that Provera caused the defect. The Supreme Court reversed in part, holding that the appropriate proximate cause question is not whether the negligence medically caused the defect but whether the negligence deprived the parents of the deeply personal right to decide whether to give birth or not. *Id.* at 818–19.

Specifically, and in relevant part to the present case, the New Jersey Supreme Court held that:

> . . . in establishing proximate cause for wrongful birth, plaintiffs must show that the resulting birth defect was reasonably foreseeable, that is, not too remote in relation to defendants' negligence, *and that had defendants not been negligent, the pregnancy would have been terminated*.

*Id.* at 815 (emphasis added).

The Supreme Court, citing *Schroeder*, 87 N.J. at 66, 432 A.2d 834, also stated that:

> The violation of the interest in self-determination that undergirds a wrongful birth cause of action consists of a parent's lost opportunity to make the personal decision of whether or not to give birth to a child who might have birth defects.

*Id.* at 809–10.

The *Canesi* Court, although acknowledging that *Berman* permits an award of medical expenses (*Id.* at 810–11), nevertheless concludes that in proving proximate cause in a wrongful birth case, there must be sufficient evidence to show that " . . . had the plaintiff known of that risk, she would have terminated her pregnancy." *Id.* at 813. Finally, the Court held that a woman would be entitled to [medical expenses] if she " . . . proves that she herself would have had an abortion." *Id.* at 819.

■ In view of the *Canesi* decision, this Court finds that Plaintiffs are entitled to

damages related to "the emotional injury attributable to the deprivation of the option to accept or reject a parental relationship with the child." *Id.* at 819 (citing *Berman,* 80 N.J. at 433, 404 A.2d 8). However, the Plaintiffs are not entitled to "both" emotional distress damages *and* medical expense damages because the latter are related to the actual life of Tiffani and *her* cause of action, *wrongful life.* Unless the Plaintiff can testify that she would have terminated the pregnancy and, thus, that medical expenses would not have been incurred, Plaintiffs are not entitled to recover those damages. They can recover only those emotional distress damages directly related to their cause of action, *wrongful birth.*

Finally, the Court must address Mr. Provenzano's "turnabout" in sworn testimony. Giving him the benefit of the doubt, while specifically seeking not to diminish the solemnity of the oath, the Court finds that, even if Mr. Provenzano's certification were to be accepted (i.e., that he wanted the child and that he would have advised his wife to have the child), there is insufficient evidence from which a jury could reasonably find that Plaintiff, had she known of the potential for defect, would have opted for an abortion.

The law says that the decision to terminate a pregnancy is, absent an overriding state interest, a woman's choice. *Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Her husband's desires, his advice, her family's counsel, her religious beliefs, her moral code are all factors which Mrs. Provenzano would undoubtedly consider, but the decision to terminate a pregnancy is a uniquely personal one, and a jury should not fairly be asked to make it for her.

### III. CONCLUSION

For the reasons stated, the Defendants motion to dismiss claims for reimbursement of extraordinary medical expenses is granted.

At trial, the Plaintiffs may seek damages related to their claims of emotional distress and suffering but may neither argue for, nor present evidence of, medical expenses associated with the treatment of their child, Tiffani.